## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RICHARD FRANCIS, *et al.*,

individually and on behalf of all others
similarly situated,

       Plaintiffs,

v.

GENERAL MOTORS LLC,

       Defendant.

**2:19-cv-11044-DML-DRG**

Judge David M. Lawson
Magistrate Judge David R. Grand

## GENERAL MOTORS' MOTION TO DISMISS
## FIRST AMENDED CLASS ACTION COMPLAINT

General Motors LLC moves to dismiss all claims in plaintiffs' First Amended Class Action Complaint (ECF No. 16) under Federal Rules of Civil Procedure 12(b)(6) and 9(b). The grounds and legal authority are set forth in the accompanying memorandum.

On September 9, 2019, Pursuant to Local Rule 7.1(a), GM communicated with plaintiffs' counsel by telephone and requested plaintiffs' consent to this motion, and plaintiffs do not consent.

September 10, 2019

Respectfully submitted,

*/s/ Kathleen Taylor Sooy*
Kathleen Taylor Sooy
Jerome A. Murphy
Jared A. Levine
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
jmurphy@crowell.com
jalevine@crowell.com

Stephanie A. Douglas
BUSH SEYFERTH & PAIGE
PLLC
3001 W. Big Beaver Road
Suite 600
Troy, MI 48084
Telephone: (248) 822-7806
Fax: (248) 822-7806
douglas@bsplaw.com

*Counsel for General Motors LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RICHARD FRANCIS, *et al.*,

individually and on behalf of all others
similarly situated,

       Plaintiffs,

v.

GENERAL MOTORS LLC,

       Defendant.

**2:19-cv-11044-DML-DRG**

Judge David M. Lawson
Magistrate Judge David R. Grand

## MEMORANDUM IN SUPPORT OF
## GENERAL MOTORS' MOTION TO DISMISS
## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF ISSUES PRESENTED.............................................ix

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
    AUTHORITY ............................................................................xi

INTRODUCTION ................................................................................1

STATEMENT OF FACTS ...................................................................3

LEGAL STANDARDS ........................................................................6

ARGUMENT .......................................................................................7

I.    THE BREACH OF EXPRESS WARRANTY CLAIMS FAIL
    BECAUSE THE GM LIMITED WARRANTY DOES NOT APPLY. ........7

II.    THE STATE LAW IMPLIED WARRANTY CLAIMS FAIL ON
    MULTIPLE GROUNDS. ..............................................................9

        A.    Plaintiffs Do Not Allege Their Vehicles Were Unfit For The
            Ordinary Purpose of Transportation......................................9

        B.    State Law Privity Requirements Bar Certain Plaintiffs' Claims. ......11

III.    THE MAGNUSON-MOSS WARRANTY ACT CLAIM FAILS
    BECAUSE PLAINTIFFS' STATE LAW WARRANTY CLAIMS
    FAIL...........................................................................................11

IV.    THE STATE LAW CONSUMER PROTECTION CLAIMS FAIL
    ON MULTIPLE GROUNDS. ........................................................12

        A.    Plaintiffs Do Not Plead With The Particularity That Rule 9(b)
            Requires.........................................................................12

        B.    Plaintiffs Do Not Sufficiently Allege That GM Had Knowledge
            Of A Defect At The Time Of Sale. ......................................14

i

C.    Plaintiff Won's UCL Claim Fails Because He Has Adequate
Remedies at Law. ....................................................................................19

V.    PLAINTIFF FRANCIS' CLAIM FOR UNJUST ENRICHMENT
UNDER MICHIGAN LAW FAILS............................................................20

VI.   PLAINTIFF SIERCHIO'S CLAIM FOR BREACH OF THE
COVENANT OF GOOD FAITH UNDER NEW JERSEY LAW
FAILS. ..........................................................................................................21

CONCLUSION ......................................................................................................21

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acedo v. DMAX, Ltd. & Gen. Motors LLC*,
 No. CV-15-02443-MMM, 2015 WL 12696176 (C.D. Cal. Nov. 13,
 2015) ................................................................................................................9

*Adams v. I-Flow Corp.*,
 No. CV09-09550, 2010 WL 1339948 (C.D. Cal. Mar. 30, 2010).....................20

*Alban v. BMW of N. Am.*,
 No. 09–5398, 2011 WL 900114 (D.N.J. Mar. 15, 2011) ............................15, 19

*Am. Suzuki Motor Corp. v. Superior Court*,
 44 Cal. Rptr. 2d 526 (Ct. App. 1995) ...............................................................9

*Aracena v. BMW of N. Am., LLC*,
 159 A.D.3d 664 (N.Y. App. Div. 2018) ............................................................11

*Armur Realty, LLC v. Banco do Brasil, S.A.*,
 No. 09–02792, 2011 WL 1327422 (D.N.J. Apr. 5, 2011)................................21

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................................6

*Baldwin v. Star Sci., Inc.*,
 78 F. Supp. 3d 724 (N.D. Ill. 2015)..................................................................12

*Barakezyan v. BMW of N. Am., LLC*,
 No. CV-16–00173-SJO, 2016 WL 2840803 (C.D. Cal. Apr. 7,
 2016) ................................................................................................................10

*Beck v. FCA US LLC*,
 273 F. Supp. 3d 735 (E.D. Mich. 2017) ...........................................................16

*Berenblat v. Apple, Inc.*,
 No. 08–4969, 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010)..............................17

*Berry v. Indianapolis Life Ins. Co.*,
608 F. Supp. 2d 785 (N.D. Tex. 2009) ................................................................13

*Bryde v. Gen. Motors, LLC*,
No. 16-cv-02421, 2016 WL 6804584 (N.D. Cal. Nov. 17, 2016).......................15

*Callaghan v. BMW of N. Am., LLC*,
No. 13–cv–04794–JD, 2014 WL 6629254 (N.D. Cal. Nov. 21,
2014) ....................................................................................................................14

*Clark v. DeLaval Separator Corp.*,
639 F.2d 1320 (5th Cir. 1981) ............................................................................10

*Clark v. LG Elecs. U.S.A., Inc.*,
No. 13–cv–485 JM, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ......................8

*Darne v. Ford Motor Co.*,
No. 13 C 03594, 2015 WL 9259455 (N.D. Ill. Dec. 18, 2015)............................8

*Davidson v. Apple*,
No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14,
2017) ......................................................................................................................7

*DeCoteau v. FCA US LLC*,
No. 2:15-cv-00020-MCE-EFB, 2015 WL 6951296 (E.D. Cal. Nov.
10, 2015) ..............................................................................................................14

*Demaria v. Nissan N. Am., Inc.*,
No. 15-C-3321, 2016 WL 374145 (N.D. Ill. Feb. 1, 2016)................................13

*Duffie v. Michigan Grp., Inc.*,
No. 14-cv-14148, 2016 WL 8259511 (E.D. Mich. Jan. 15, 2016).....................20

*Elson v. State Farm Fire & Cas. Co.*,
691 N.E.2d 807 (Ill. App. Ct. 1998) ..................................................................15

*Fleming Cos. v. Thriftway Medford Lakes, Inc.*,
913 F. Supp. 837 (D.N.J. 1995)..........................................................................21

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ..........................................................................12, 13

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
  966 F. Supp. 1525 (E.D. Mo. 1997) ...................................................................10

*Gertz v. Toyota Motor Corp.*,
  No. CV 10–1089 PSG, 2011 WL 3681647 (C.D. Cal. Aug. 22,
  2011) ....................................................................................................................8

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...................................................................13

*Greenberger v. GEICO Gen. Ins. Co.*,
  631 F.3d 392 (7th Cir. 2011) .............................................................................12

*Grodzitsky v. Am. Honda Motor Co.*,
  No. 2:12–cv–1142–SVW–PLA, 2013 WL 690822 (C.D. Cal. Feb.
  19, 2013) .............................................................................................................16

*Herrera v. Volkswagen Grp. of Am., Inc.*,
  No. SACV 16–00364–CJC, 2016 WL 10000085 (C.D. Cal. Sept.
  9, 2016) ...............................................................................................................14

*Hindsman v. Gen. Motors LLC*,
  No. 17-cv-05337-JSC, 2018 WL 2463113 (N.D. Cal. June 1, 2018) .................8

*Hughes v. Panasonic Consumer Elecs. Co.*,
  No. 10–846, 2011 WL 2976839 (D.N.J. July 21, 2011) ....................................13

*In re iPhone 4S Consumer Litig.*,
  No. C-12–1127-CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) .................13

*Jackson v. Eddy's LI RV Ctr. Inc.*,
  845 F. Supp. 2d 523 (E.D.N.Y. 2012) ...............................................................10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...........................................................................12

*League of United Latin Am. Citizens v. Bredesen*,
  500 F.3d 523 (6th Cir. 2007) ...............................................................................6

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) ...............................................................10

*Lucas v. City of Visalia*,
  726 F. Supp. 2d 1149 (E.D. Cal. 2010) .............................................................14

*Matanky v. General Motors LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ...........................................................20

*McQueen v. BMW of N. Am., LLC*,
  No. 12–6674, 2013 WL 4607353 (D.N.J. Aug. 29, 2013) ..........................14, 16

*Morris Pumps v. Centerline Piping, Inc.*,
  729 N.W.2d 898 (Mich. Ct. App. 2006) ............................................................20

*Munning v. Gap, Inc.*,
  238 F. Supp. 3d 1195 (N.D. Cal. 2017) ............................................................20

*Myers v. BMW of N. Am., LLC*,
  No. 16-cv-00412-WHO, 2016 WL 5897740 (N.D. Cal. Oct. 11,
  2016) .................................................................................................................11

*Nardizzi v. Gen. Motors LLC*,
  No. CV 19-03665-CJC, Dkt. 31 (C.D. Cal. Aug. 29, 2019) ...................8, 12, 18

*Oggi Trattoria & Café Ltd. v. Isuzu Motors Am. Inc.*,
  865 N.E.2d 334 (Ill. Ct. App. 2007) .................................................................10

*Oliver v. Funai Corp.*,
  No. 14- 04532, 2015 WL 9304541 (D.N.J. Dec. 21, 2015) ........................17, 18

*Orthoflex, Inc. v. ThermoTek, Inc.*,
  Nos. 3:11–CV–0870–D, 2013 WL 4045206 (N.D. Tex. Aug. 9,
  2013) ...................................................................................................................8

*Parenteau v. Gen. Motors, LLC*,
  No. CV-14–04961–RGK, 2015 WL 1020499 (C.D. Cal. Mar. 5,
  2015) .................................................................................................................13

*Philips v. Ford Motor Co.*,
  No. 14–CV–02989–LHK, 2015 WL 4111448 (N.D. Cal. July 7,
  2015) .............................................................................................................19, 20

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
  683 F.3d 239 (6th Cir. 2012) ..........................................................................6, 13

*Resnick v. Hyundai Motor Am., Inc.*,
No. 16–00593, 2016 WL 9455016 (C.D. Cal. Nov. 14, 2016) ...................17, 18

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
No. 16-CV-12645, 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016) ...................9

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
No. CV 15-8629-FMO, 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016) ........................................................................................................20

*Schechner v. Whirlpool Corp.*,
237 F. Supp. 3d 601 (E.D. Mich. 2017) .............................................................8

*Sheris v. Nissan N. Am., Inc.*,
No. Civ. 07–2516, 2008 WL 2354908 (D.N.J. June 2, 2008)...........................10

*Sloan v. Gen. Motors LLC*,
No. 16-cv-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) .......................................................................................................7, 9, 16

*Solo v. UPS Co.*,
819 F.3d 788 (6th Cir. 2016) ............................................................................20

*Stevenson v. Mazda Motor of Am., Inc.*,
No. 14–5250, 2015 WL 3487756 (D.N.J. June 2, 2015) ................10, 13, 15, 16

*Temple v. Fleetwood Enters., Inc.*,
133 F. App'x 254 (6th Cir. 2005) ......................................................................12

*Victorino v. FCA US LLC*,
No. 16-cv-1617-GPC, 2018 WL 1083395 (S.D. Cal. Feb. 27, 2018)...............15

*Voelker v. Porsche Cars N. Am., Inc.*,
353 F.3d 516 (7th Cir. 2003) ............................................................................11

*Weddle v. Smith & Nephew, Inc.*,
No. 14-C-09549, 2016 WL 1407634 (N.D. Ill. April 11, 2016) .......................10

*Whirlpool Corp. v. Grigoleit Co.*,
713 F.3d 316 (6th Cir. 2013) ..............................................................................8

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ..........................................................................16

vii

*Woods v. Maytag Co.*,
   No. 10–CV–0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010)......................15

*Wozniak v. Ford Motor Co.*,
   No. 2:17-cv-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019)......6, 12, 15, 17

*Yagman v. Gen. Motors Co.*,
   No. CV–14–4696–MWF, 2014 WL 4177295 (C.D. Cal. Aug. 22,
   2014) ......................................................................................................14

*Zanger v. Gulf Stream Coach, Inc.*,
   No. 05-72300, 2006 WL 1494952 (E.D. Mich. May 25, 2006).......................11

*Zapata Fonseca v. Goya Foods Inc.*,
   No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8,
   2016) ......................................................................................................20

*Zea v. Ford Motor Co.*,
   No. H–14–3290, 2017 WL 979067 (S.D. Tex. Mar. 10, 2017) .......................10

## STATEMENT OF ISSUES PRESENTED

1.    Should this Court dismiss plaintiffs' express warranty claims in Counts 2, 5, 9, 12, 16, and 19 because GM's Limited Warranty does not cover design defects?

2.    Should this Court dismiss plaintiffs' implied warranty claims in Counts 3, 6, 10, 13, 17, and 20 because they do not allege that their vehicles were unmerchantable (unfit for the ordinary purpose of transportation)?

3.    Should this Court dismiss plaintiffs' implied warranty claims in Counts 6, 10, and 17 because the applicable states' laws preclude their claims against GM as a remote manufacturer where plaintiffs purchased their vehicles from independent dealerships?

4.    Should this Court dismiss plaintiffs' claims under the Magnuson-Moss Warranty Act in Count 1 because they do not allege viable state law warranty claims?

5.    Should this Court dismiss plaintiffs' statutory consumer protection claims in Counts 7, 8, 11, 15, and 18 because they do not allege facts sufficient to establish deceptive advertising, reliance, causation, or injury as required by Rules 8 and 9(b)?

6.    Should this Court dismiss plaintiffs' statutory consumer protection claims in Counts 7, 8, 11, 15, and 18 because they do not allege GM had

knowledge of a defect at the time of sale?

7.    Should this Court dismiss the claim under the California Unfair Competition Law in Count 7 because plaintiffs have adequate legal remedies?

8.    Should this Court dismiss the unjust enrichment claim in Count 4 because it is precluded by the existence of an express contract (GM's Limited Warranty) or an adequate remedy at law?

9.    Should this Court dismiss plaintiff Sierchio's breach of good faith and fair dealing claim in Count 14 because is precluded by the existence of an express contract (GM's Limited Warranty)?

General Motors answers "yes" to each of these questions.

Plaintiffs answer "no" to each of these questions.

# STATEMENT OF
# <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

## <u>Cases</u>

*Acedo v. DMAX, Ltd. and General Motors LLC*,
        2015 WL 12696176 (C.D. Cal. Nov. 13, 2015)

*Beck v. FCA US LLC*,
        273 F. Supp. 3d 735 (E.D. Mich. 2017)

*Gertz v. Toyota Motor Corp.*,
        2011 WL 3681647 (C.D. Cal. Aug. 22, 2011)

*Herrera v. Volkswagen Grp. of Am., Inc.*,
        2016 WL 10000085 (C.D. Cal. Sept. 9, 2016)

*Hindsman v. Gen. Motors LLC*,
        2018 WL 2463113 (N.D. Cal. June 1, 2018)

*Matanky v. Gen. Motors*,
        370 F. Supp. 3d 772 (E.D. Mich. 2019)

*Philips v. Ford Motor Co.*,
        2015 WL 4111448 (N.D. Cal. July 7, 2015)

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
        683 F.3d 239 (6th Cir. 2012)

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
        2016 WL 9775018 (E.D. Mich. Oct. 21, 2016)

*Schechner v. Whirlpool Corp.*,
        237 F. Supp. 3d 601 (E.D. Mich. 2017)

*Sloan v. Gen. Motors LLC*,
        2017 WL 3283998 (N.D. Cal. Aug. 1, 2017)

*Wozniak v. Ford Motor Co.*,
　　　　2019 WL 108845 (E.D. Mich. Jan. 4, 2019)

**<u>Rules</u>**

Federal Rules of Civil Procedure 12(b)(6)

Federal Rules of Civil Procedure 9(b)

Federal Rules of Civil Procedure 8

## INTRODUCTION

Seven plaintiffs allege that the transmissions in their GM vehicles "shake, shudder, jerk, clunk, or 'hard shift'" when changing gears. Plaintiffs speculate that these disparate symptoms arise from an unidentified common design defect in "hundreds of thousands" of GM vehicles with two different transmissions (the "Class Vehicles").[1] Plaintiffs never precisely define their alleged "Transmission Defect" or state why they think it affects an entire population of GM vehicles.

Plaintiffs allege 20 causes of action on behalf of six putative state-wide classes of vehicle purchasers and lessees from California, Illinois, Michigan, New Jersey, New York, and Texas. These include claims for: (i) breach of express warranty under state law and the federal Magnuson-Moss Warranty Act; (ii) breach of implied warranty under state law; (iii) violations of state consumer protection statutes; (iv) unjust enrichment under Michigan law; and (v) breach of the covenant of good faith under New Jersey law. All claims are subject to dismissal under Rules 12(b)(6) and 9(b). *See* Ex. 1.[2]

First, the state law and MMWA express warranty claims (Counts 1, 2, 5, 9,

---

[1] Plaintiffs allege Class Vehicles include: (i) 2015-2019 Chevrolet Silverados and Corvettes and GMC Sierras, Yukons, and Yukon XLs; (ii) 2015-2017 Cadillac Escalades and Escalade ESVs and GMC Yukon Denalis and Denali XLs; (iii) 2016-2019 Chevrolet Camaros and Cadillac ATSs, ATS-Vs, CTSs, CT6s, and CTS-Vs; and (iv) 2017-2019 Chevrolet Colorados and GMC Canyons.

[2] The attached Exhibit 2 is a list of GM's grounds for dismissal of the 20 Counts.

12, 16 and 19) fail because plaintiffs' alleged transmission design defect is not covered under GM's New Vehicle Limited Warranty, which covers only manufacturing defects.

Second, the implied warranty claims (Counts 3, 6, 10, 13, 17, and 20) fail because plaintiffs do not allege that their vehicles were unfit for the ordinary purpose of transportation. The claims of California, Illinois and New York plaintiffs (Counts 6, 10, and 17) also fail because these states bar claims against remote manufacturers such as GM, from which consumers did not directly purchase vehicles.

Third, the state consumer protection claims (Counts 7, 8, 11, 15, and 18) fail because plaintiffs do not plead deceptive advertising, reliance, causation, or injury with the particularity required by Rule 9(b) or the notice requirements of Rule 8. These claims also fail because plaintiffs do not adequately allege that GM had knowledge of a defect at the time of sale. Certain claims also fail on state-specific grounds.

Fourth, Michigan plaintiff Francis' unjust enrichment claim (Count 4) is barred by the existence of an express warranty and adequate legal remedies.

Fifth, New Jersey plaintiff Sierchio cannot rely on the covenant of good faith and fair dealing (Count 14) to contradict the terms of his express warranty.

## STATEMENT OF FACTS

Plaintiffs each purchased or leased different GM vehicles equipped with either GM's 8L45 or 8L90 automatic transmissions. Their states of residence, dates of purchase/lease, and vehicle makes and model years are set forth below:

| Plaintiff | Residence | Date | Model Year | Make |
|-----------|-----------|------|------------|------|
| Francis | MI | 8/22/2017 | 2017 | GMC Yukon Denali |
| Won | CA | 5/11/2017 | 2016 | Cadillac Escalade |
| Speerly | IL | 4/14/2017 | 2017 | GMC Canyon |
| Sierchio | NJ | 7/9/2016 | 2016 | Chevrolet Camaro |
| Plafker | NY | 9/8/2017 | 2017 | GMC Sierra Denali |
| Young | TX | 5/12/2015 | 2015 | Chevrolet Corvette |
| Degrand | TX | 7/13/2018 | 2018 | GMC Canyon |

Compl. ¶¶ 14-21, 139-178. Each plaintiff obtained his vehicle from an independent dealer in his state of residence, except for Texas plaintiff Young, who purchased his vehicle in New York. *Id.* ¶¶ 136, 140, 145, 151, 157, 163, 172.

Before purchasing their vehicles, plaintiffs Won, Speerly, Sierchio, Plafker, and Degrand allege that they viewed unspecified GM "marketing materials" (*id.* ¶¶ 140, 145, 151, 156, 172). Plaintiffs Francis and Young do not allege that they viewed such materials before purchase. *Id.* ¶¶ 136-39, 163-171.

Plaintiffs each allege that their vehicles experienced generalized transmission problems with different symptoms,[3] which occurred at different times

---

[3] *Id.* ¶ 137 (Francis: "lurches and downshifts hard"); *id.* ¶ 141 (Won: "hesitates around 1st or 2nd gear"); *id.* ¶ 146 (Speerly: "vibrat[es], shutter[s], and surg[es]" at 50-60 mph); *id.* ¶ 152 (Sierchio: "shift[s] into lower gears on flat roads"); *id.* ¶ 157 (continued...)

in the life of their vehicles.[4] Plaintiffs allege GM did not repair these transmission issues under the GM New Vehicle Limited Warranty. *Id.* ¶¶ 36-37, 140-175.

Plaintiffs speculate that their transmission issues arise from an unidentified "common defect" in all GM vehicles with two different models of automatic transmissions: the 8L45 or 8L90. *Id.* ¶¶ 2, 35, 38-40, 181. Plaintiffs do not allege the precise cause of this alleged defect and define the "Transmission Defect" broadly to include any "shake, shudder, jerk, clunk, or 'hard shift' when the vehicle's automatic transmission changes gears." *Id.* ¶ 2.

Plaintiffs speculate that GM had knowledge of the alleged defect in each of their vehicles at the time of sale or lease because, from November 20, 2015 to March 12, 2019, 88 consumers submitted complaints to the National Highway Traffic Safety Administration about generalized transmission issues in various GM vehicles (*id.* ¶¶ 43-56). *See* Ex. 2.[5] Nearly all of these complaints (74 of 88) were

_____

(continued…)

(Plafker: surges when shifting "into first or second gear"); *id.* ¶ 164 (Young: "at approximately 80-90 mph, the transmission sometimes nosedives"); *id.* ¶ 173-74 (Degrand: hesitates after a "cold start" and "between second and third gears").

[4] Plaintiffs Francis, Plafker, and Young allege issues "[a]lmost immediately" or "shortly after" obtaining their vehicles (*id.* ¶¶ 137, 157, 164). Other plaintiffs allege that they experienced issues months or even years later. *Id.* ¶ 141 (Won: six months); ¶ 148 (Speerly: four months); ¶ 152 (Sierchio: more than two years); ¶ 173 (Degrand: three months).

[5] The attached Exhibit 3 summarizes the date, make, and model year of vehicles in NHTSA and consumer complaints cited in, or attached to, the complaint.

submitted *after* all plaintiffs (except Degrand) had already purchased or leased their vehicles, and more than half (55 of 88) involve different vehicles than the vehicles plaintiffs purchased. *Id.* ¶¶ 43-45, 49(b), 50-51, 55-56. These 88 complaints also are varied; they allege different symptoms and different causes.

Plaintiffs further speculate that GM had knowledge of a defect because, from March 1, 2016 to January 1, 2018, 45 consumers published complaints on third-party websites about generalized transmission issues in various GM vehicles. *Id.* ¶¶ 57-70. These complaints also do not describe a common symptom or a common cause, and many do not even identify a specific vehicle.[6]

Plaintiffs also speculate that GM had knowledge of a defect because, from October 13, 2015 to November 20, 2018, GM issued routine service bulletins informing dealership service personnel that "customers . . . might complain" about a broad spectrum of issues in small minorities of vehicles. *Id.* ¶¶ 72-129. These bulletins describe different issues, with different symptoms, causes, and remedies,[7] and involve different vehicles, as well as vehicles with entirely different

---

[6] *See id.* ¶¶ 58(a, c, e, and f) *and* 66(j) (no vehicle identified); ¶ 61(e) (unidentified Cadillac); ¶ 70 (unidentified 2019 vehicle); ¶ 67 (unidentified GMC vehicle).

[7] These bulletins address, among others: (1) shakes and/or shudders during vehicle acceleration (*id.* ¶¶ 73-84); shifts that are "too firm (harsh)" or that "may slip or flare," (*id.* ¶¶ 85-92, 117, 123); (iii) "delayed engagement" when shifting between park and reverse "after the vehicle has been sitting with the engine off" (*id.* ¶¶ 108-09); and (iv) "torque converter shudder" (*id.* ¶¶ 110-113).

transmissions. These bulletins do *not* suggest that repairs are necessary in all of the Class Vehicles here. To the contrary, the bulletins inform dealers to conduct repairs only in the event a customer experiences one of these discrete issues.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, a complaint must set forth enough non-conclusory allegations to show that liability for the alleged conduct is not merely possible but plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

Claims arising from fraud allegations "must meet the heightened pleading standard of Civil Rule 9(b)." *Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019).[8] Plaintiffs must plead "the who, what, when, where, and how" of the allegedly fraudulent conduct. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012).

---

[8] Unpublished authorities are attached as Exhibit 4.

## ARGUMENT

### I.   THE BREACH OF EXPRESS WARRANTY CLAIMS FAIL BECAUSE THE GM LIMITED WARRANTY DOES NOT APPLY.

Plaintiffs' express warranty claims fail because their alleged transmission design defect is not covered by GM's Limited Warranty, which limits coverage to "any vehicle defect . . . [related to] materials or workmanship occurring during the warranty period." Compl. ¶ 36; *see Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) ("[T]he overwhelming weight of state law authority holds that design defects are *not* covered under" GM's Limited Warranty).

There are two distinct categories of product defects: manufacturing defects (materials and workmanship) and design defects.

> A manufacturing defect exists when an item is produced in a substandard condition, and [s]uch a defect is often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line. A design defect, in contrast, exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective.

*Davidson v. Apple*, No. 16-CV-04942-LHK, 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017) (internal citation and quotations omitted).

Here, plaintiffs allege that the transmission defect is a "common defect" (Compl. ¶ 2) affecting all "new and used vehicles manufactured by [GM] between 2015 and 2019" equipped with 8L45 or 8L90 transmissions (*id*. ¶ 1), including all

Class Vehicles. Where a defect is alleged in all vehicles, not only those owned by plaintiffs, the claim is for an alleged design defect. *Gertz v. Toyota Motor Corp.*, No. CV 10–1089 PSG, 2011 WL 3681647, at *10 (C.D. Cal. Aug. 22, 2011).

An "express warranty covering materials and workmanship does not include design defects." *Clark v. LG Elecs. U.S.A., Inc.*, No. 13–cv–485 JM, 2013 WL 5816410, at *7 (S.D. Cal. Oct. 29, 2013) (internal quotation marks omitted). A claim for breach of an express warranty "fails as a matter of law if it alleges a design defect, but is brought under an express written warranty covering materials and workmanship." *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 613 (E.D. Mich. 2017) (internal quotation marks omitted); *Orthoflex, Inc. v. ThermoTek, Inc.*, Nos. 3:11–CV–0870–D *et al.*, 2013 WL 4045206, at *8 (N.D. Tex. Aug. 9, 2013).

Numerous courts have enforced the plain language of GM's warranty[9] at the motion to dismiss stage, and specifically held that it does not cover alleged design defects. *See Nardizzi v. Gen. Motors LLC*, No. CV 19-03665-CJC, Dkt. 31 at 6 (C.D. Cal. Aug. 29, 2019) ("To state a claim for breach of [GM's] express warranty, Plaintiff must allege that the defect is due to materials or workmanship."); *Hindsman v. Gen. Motors LLC*, No. 17-cv-05337-JSC, 2018 WL

---

[9] Plaintiffs' conclusory allegation that the exclusion of design defects from GM's Warranty is unconscionable is insufficient to avoid dismissal. *See, e.g.*, *Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 321 (6th Cir. 2013); *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *8 (N.D. Ill. Dec. 18, 2015).

2463113, at *6 (N.D. Cal. June 1, 2018) ("As the New Vehicle Limited Warranties cover defects in materials or workmanship they do not cover design defects"); *Acedo v. DMAX, Ltd. & Gen. Motors LLC*, No. CV-15-02443-MMM, 2015 WL 12696176, at *23 (C.D. Cal. Nov. 13, 2015) (GM warranty "clearly limits coverage to 'defects in materials and workmanship'" and does not cover design defects); *Sloan*, 2017 WL 3283998, at *8.[10]

## II.  THE STATE LAW IMPLIED WARRANTY CLAIMS FAIL ON MULTIPLE GROUNDS.

### A.  Plaintiffs Do Not Allege Their Vehicles Were Unfit For The Ordinary Purpose of Transportation.

The implied warranty of merchantability provides for a minimum level of quality and does not "impose a general requirement that goods precisely fulfill the expectation of the buyer." *Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 529 (Ct. App. 1995); *see also Rosenbaum v. Toyota Motor Sales, USA, Inc.*, No. 16-CV-12645, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016) ("Merchantable is not a synonym for perfect. The warranty of merchantability is

---

[10] A single inconsistent decision, *McKee v. General Motors LLC,* held that all defects are covered by the GM warranty, including design defects. 376 F. Supp. 3d 751, 756-57 (E.D. Mich.2019). Focusing on the absence of a comma, the Court adopted an interpretation that, contrary to basic contract construction principles, would give no meaning to the phrase "occurring during the warranty period," rendering this language superfluous. GM respectfully states that the only reasonable view giving meaning to every word in the warranty provision limits its "Limited Warranty" to manufacturing defects.

that goods are of average quality in the industry" and fit for their "ordinary purpose.") (citation omitted).[11]

In cases involving vehicle sales, plaintiffs must plead, and ultimately prove, that the vehicle manifests a defect that is so basic it renders it unfit for its ordinary purpose: "providing transportation." *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997).[12] Here, plaintiffs make a conclusory allegation that the alleged transmission issues render the vehicles "unfit for their ordinary use of providing safe and reliable transportation" (Compl. ¶ 7), but allege only inconvenience and discomfort arising from engine shuddering and hesitation in shifting (*id.* ¶¶ 136-175). No plaintiff alleges that he actually experienced safety issues arising from the alleged transmission defect or that he stopped driving his vehicle. *Id.*; *Weddle v. Smith & Nephew, Inc.*, No. 14-C-09549, 2016 WL 1407634, at *5 (N.D. Ill. April 11, 2016) (rejecting conclusory allegations that product was "unreasonably dangerous and defective"); *Lee v.*

---

[11] *See Barakezyan v. BMW of N. Am., LLC*, No. CV-16–00173-SJO, 2016 WL 2840803, at *8 (C.D. Cal. Apr. 7, 2016); *Oggi Trattoria & Café Ltd. v. Isuzu Motors Am. Inc.,*, 865 N.E.2d 334, 341 (Ill. Ct. App. 2007); *Jackson v. Eddy's LI RV Ctr. Inc.*, 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012); *Clark v. DeLaval Separator Corp.*, 639 F.2d 1320, 1326 (5th Cir. 1981); *Sheris v. Nissan N. Am., Inc.*, No. Civ. 07–2516, 2008 WL 2354908, at *6 (D.N.J. June 2, 2008).

[12] *See also Oggi,* 865 N.E.2d at 341; *Jackson*, 845 F. Supp. 2d at 531; *Zea v. Ford Motor Co.*, No. H–14–3290, 2017 WL 979067, at *1 (S.D. Tex. Mar. 10, 2017); *Stevenson v. Mazda Motor of Am., Inc.*, No. 14–5250, 2015 WL 3487756 at *8 (D.N.J. June 2, 2015).

*Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing claim where plaintiffs have not "stopped using their vehicles").

### B.   State Law Privity Requirements Bar Certain Plaintiffs' Claims.

The implied warranty claims of the California, Illinois, and New York plaintiffs (Counts 7, 11, and 18) must be dismissed because those plaintiffs purchased their vehicles from independent dealerships and had no direct transaction with GM. Compl. ¶¶ 140, 145, 156. Under the laws of these states, a plaintiff cannot recover economic losses for breach of the implied warranty unless he directly purchased the product from the defendant, and therefore plaintiffs here cannot bring a claim against the remote manufacturer GM.[13]

### III.   The Magnuson-Moss Warranty Act Claim Fails Because Plaintiffs' State Law Warranty Claims Fail.

Plaintiffs assert their MMWA claim based solely on the alleged breach of GM's New Vehicle Limited Warranty (Compl. ¶¶ 190-200). An MMWA claim is "directly depend[e]nt upon a sustainable claim for breach of warranty" under state law. *Zanger v. Gulf Stream Coach, Inc.*, No. 05-72300, 2006 WL 1494952, at *7 (E.D. Mich. May 25, 2006) ("if there [is] no actionable [state law] warranty claim, there can be no violation of the Magnuson–Moss Act.") (internal quotation marks

---

[13] *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003); *Myers v. BMW of N. Am., LLC*, No. 16-cv-00412-WHO, 2016 WL 5897740, at *7 (N.D. Cal. Oct. 11, 2016); *Aracena v. BMW of N. Am., LLC*, 159 A.D.3d 664, 666 (N.Y. App. Div. 2018).

omitted); *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005); *Nardizzi*, No. CV 19-03665-CJC, Dkt. 31 at 7. Because plaintiffs' state law express warranty claims cannot proceed, the MMWA claim (Count 1) also fails.

## IV.   THE STATE LAW CONSUMER PROTECTION CLAIMS FAIL ON MULTIPLE GROUNDS.

### A.   Plaintiffs Do Not Plead With The Particularity That Rule 9(b) Requires.

Plaintiffs' allegations do not meet the heightened pleading standard of Rule 9(b), which requires particularized allegations of deceptive advertising, reliance, causation, and injury. *Wozniak*, 2019 WL 108845, at *3.[14] Plaintiffs do not even satisfy the lower pleading standard of Rule 8 because they plead no facts identifying GM communications that they relied on, when they relied on them, or how those communications were misleading, deceptive, or caused them injury.[15] These are all essential facts, and without any of them, plaintiffs' claims cannot stand. *See, e.g.*, *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 738 (N.D. Ill. 2015) (dismissing ICFA claim because plaintiff failed to "identify a specific

---

[14] *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (UCL); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (NJCFA); *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (ICFA). Rule 9(b) does not apply to plaintiff Plafker's claims under New York's GBL § 349, but his conclusory allegations are insufficient under Rule 8.

[15] Five plaintiffs allege that they viewed unidentified "marketing materials" (Compl. ¶¶ 140, 145, 151, 156, 172). Plaintiffs Francis and Young do not allege that they viewed such materials. *Id.* ¶¶ 136-39, 163-171.

misrepresentation that he saw, the date he saw it, and where he saw it").[16]

Plaintiffs' conclusory allegations of concealment and omissions are insufficient for the same reasons. Plaintiffs do not identify any specific communications between themselves and GM that allegedly omitted any information. Omissions-based consumer fraud claims must set forth "the circumstances surrounding the omissions, including when and where they occurred, and what material facts should have been disclosed at what times." *Demaria v. Nissan N. Am., Inc.*, No. 15-C-3321, 2016 WL 374145, at *10 (N.D. Ill. Feb. 1, 2016) (internal quotation marks omitted); *see also Parenteau v. Gen. Motors*, *LLC*, No. CV-14–04961–RGK, 2015 WL 1020499, at *7 (C.D. Cal. Mar. 5, 2015) (dismissing CLRA claims alleging generic failure to disclose in "various types of information").[17]

Plaintiffs also cannot state omission-based claims because they do not plead "precisely what was omitted." *Republic,* 683 F.3d at 256. Plaintiffs do not allege any specific component of their transmissions is defective, and they do not allege

---

[16] *See also Hughes v. Panasonic Consumer Elecs. Co.*, No. 10–846, 2011 WL 2976839, at *13 (D.N.J. July 21, 2011) (NJCFA); *In re iPhone 4S Consumer Litig.*, No. C-12–1127-CW, 2013 WL 3829653, at *13 (N.D. Cal. July 23, 2013) (UCL); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (GBL).

[17] *See also Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 796, 799-800 (N.D. Tex. 2009) (DTPA); *Stevenson,* 2015 WL 3487756, at *8 (NJCFA).

uniform symptoms of a defect. Instead, they plead a wide range of general transmission problems (*see* fn.3 and fn.4 at 3-4, above), which cannot serve as the basis of omission-based consumer fraud claims. Courts routinely dismiss consumer fraud claims where, as here, plaintiffs fail to adequately allege "the contours of the alleged defect" that the defendant was required to disclose. *See Herrera v. Volkswagen Grp. of Am., Inc.*, No. SACV 16–00364–CJC, 2016 WL 10000085, at *4 (C.D. Cal. Sept. 9, 2016); *DeCoteau v. FCA US LLC*, No. 2:15-cv-00020-MCE-EFB, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) (plaintiffs "failed to allege how a specific defect within the transmission caused the 'symptoms' Plaintiffs purportedly experienced."); *McQueen v. BMW of N. Am., LLC*, No. 12–6674, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013) ("There is no identification as to what precisely the defect is, other than a conclusory allegation that the transmission system is defective."); *Callaghan v. BMW of N. Am., LLC*, No. 13–cv–04794–JD, 2014 WL 6629254, at *3 (N.D. Cal. Nov. 21, 2014) ("[t]ransmissions can fail for a myriad of different reasons").[18]

### B. Plaintiffs Do Not Sufficiently Allege That GM Had Knowledge Of A Defect At The Time Of Sale.

Plaintiffs' allegations do not establish that GM knew of a specific defect in

---

[18] *See also Yagman v. Gen. Motors Co.*, No. CV–14–4696–MWF, 2014 WL 4177295, at *3 (C.D. Cal. Aug. 22, 2014) ("Plaintiff here has only alleged an injury, not a defect."); *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010).

plaintiffs' vehicles at the time of sale, which is a core element of those claims.[19] To suggest otherwise, plaintiffs speculate that GM knew of a "Transmission Defect" in all Class Vehicles based on (i) NHTSA complaints, (ii) consumer complaints on third-party websites, and (iii) service bulletins that GM issues to authorized dealerships.

### 1. NHTSA Complaints

Plaintiffs cite 88 NHTSA complaints about various transmission issues in various GM vehicles. Compl. ¶¶ 41, 43-56.[20] These complaints contain generalized transmission issues with varied symptoms and no common cause.[21] These NHTSA complaints cannot raise an inference of knowledge because they do not describe a single identifiable defect. *See Victorino v. FCA US LLC*, No. 16-cv-1617-GPC, 2018 WL 1083395, at *8 (S.D. Cal. Feb. 27, 2018) ("When addressing a

---

[19] *See, e.g.*, *Wozniak*, 2019 WL 108845, at *3; *Bryde v. Gen. Motors, LLC*, No. 16-cv-02421, 2016 WL 6804584, at *9 (N.D. Cal. Nov. 17, 2016); *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 817 (Ill. App. Ct. 1998); *Woods v. Maytag Co.*, No. 10–CV–0559, 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010); *Alban v. BMW of N. Am.*, No. 09–5398, 2011 WL 900114, at *32 (D.N.J. Mar. 15, 2011).

[20] Most of these 88 complaints (55 of 88) concerned vehicles that *no plaintiff purchased*. *Id.* ¶¶ 43-45, 49(b), 50-52, 55-56. *See Stevenson*, 2015 WL 3487756, at *6 ("consumers cannot rely on general allegations that a manufacturer had received complaints about similar makes and models of vehicles.").

[21] *E.g.*, *id.* ¶ 49(e) ("transmission makes a boom sound"), ¶ 50(f) ("rough idle after truck is . . . warm"), ¶ 52(h) ("the continental tires are cupping" and "the driveline makes a whining noise"), ¶ 55(f) ("electrical problems causing starting issues"), ¶ 55(g) (jerk accompanied by brake failure and "abnormal scratching noise").

defendant's pre-sale knowledge, courts have held that the defendant must have knowledge of *the specific defect alleged*, not a general defect.") (emphasis added); *see also Sloan,* 2017 WL 3283998, at *7.

Most of these generalized complaints (74 of 88) were also submitted *after* all plaintiffs (other than Degrand) had already purchased or leased their vehicles. *Id.* ¶¶ 14-21, 43-56.[22] These complaints cannot establish GM had knowledge of any transmission defect at the time of purchase, and should not be considered by the Court. *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753-54 (E.D. Mich. 2017).[23]

Plaintiffs allege no facts to suggest that this statistically insignificant number of complaints out of "hundreds of thousands" of Class Vehicles sold (Compl. ¶ 35) would constitute the "unusually high number of complaints" needed to provide GM with sufficient notice of a defect in all Class Vehicles. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017).[24]

---

[22] No complaint was submitted before plaintiff Young purchased his vehicle, and only two complaints were filed before plaintiff Sierchio purchased his vehicle. *Id.*

[23] *See also Grodzitsky v. Am. Honda Motor Co.*, No. 2:12–cv–1142–SVW–PLA, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013) (no "plausible inference of knowledge based on their allegation that Defendant received customer complaints *after* the sales of the vehicles in question."); *Stevenson*, 2015 WL 3487756 at *7.

[24] *See also Sloan*, 2017 WL 3283998 at *7 ("81 complaints posted over the course of seven years . . . do not show GM's knowledge of the alleged defect"); *McQueen*, 2013 WL 4607353 at *7 ("Nor can such a low rate of reports constitute a plausible allegation that BMW must have known of the alleged defect.").

## 2.      Third-Party Website Complaints

Plaintiffs also try to raise an inference of knowledge based on 45 consumer complaints from six different third-party websites between March 2016 and January 2018, which, "[u]pon information and belief, GM employees have seen." Compl. ¶¶ 57-70. This statistically insignificant number of complaints address disparate symptoms and different transmission-related issues in different makes and model years with different transmissions. And many do not identify the relevant vehicles. *See, e.g.*, *id.* ¶¶ 58(a, c, e, and f), 61(e), 66(j), ¶ 67, ¶ 70.

Plaintiffs do not allege *facts* to suggest that GM monitored these websites or saw any of these posts. *See Wozniak,* 2019 WL 108845, at *3 ("Plaintiffs' general assertions of Defendant's knowledge without any alleged facts that Defendant was even aware of the complaints do not rise above mere speculation.").[25] In any event, this statistically insignificant number of complaints from third-party websites could not support GM's knowledge of a design defect impacting several hundred thousand vehicles. Far larger numbers of complaints posted directly on a *manufacturer's own website* have been found insufficient because they "merely establish the fact that some consumers were complaining." *See Berenblat v. Apple,*

---

[25] *See also Resnick v. Hyundai Motor Am., Inc.*, No. 16–00593, 2016 WL 9455016, at *13, *15 (C.D. Cal. Nov. 14, 2016) (plaintiffs failed to present "facts indicating that Hyundai monitored these websites or was aware of these complaints."); *Oliver v. Funai Corp.,* No. 14- 04532, 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015).

*Inc.*, No. 08–4969, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (finding 350 complaints posted to defendant's own website insufficient to show knowledge of a defect); *Nardizzi*, No. CV 19-03665-CJC, Dkt. 31 at 9-10 ("A handful of online complaints, standing alone, does not plausibly establish that the 'amassed weight' of consumer complaints provided GM with pre-purchase knowledge of the defect.").[26]

### 3.   Technical Service Bulletins

Plaintiffs allege that GM knew of the alleged transmission defect because, between October 2015 and November 2018, GM issued routine service bulletins informing dealership service personnel that "customers . . . might complain" about a broad spectrum of issues affecting small minorities of vehicles. Compl. ¶¶ 72-129. These bulletins describe nearly a dozen different issues, with different symptoms, causes, and remedies, and involve different subsets of Class Vehicles, as well as vehicles with entirely different transmissions. These bulletins address issues ranging from "clunk noise[s]" to "delayed engagement" to "harsh shifting"

---

[26] *See also Oliver*, 2015 WL 9304541, at *4 ("imputing knowledge" based on "internet posting[s] would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery" because plaintiffs would need only allege "that a product broke once and that someone had complained about it on the internet") (internal quotation marks and citation omitted); *Resnick*, 2016 WL 9455016, at *13 ("complaints merely establish that several customers had issues with their specific vehicles, not that there was a widespread defect").

at various speeds. *Id.* ¶¶ 108-09, 118, 122, 124, 137. They identify causes ranging from "adaptive functions" in transmissions (*id.* ¶¶ 85-92, 117, 123), torque converters (*id.* ¶¶ 110-13), Clutch Control Solenoids and valve bodies (*id.* ¶ 120), TCM calibrations (*id.* ¶ 121), and vehicle software (*id.* ¶ 122). These bulletins do not suggest the existence of any single, common defect in all Class Vehicles.

These bulletins inform dealerships of *potential* customer complaints; they do not establish that any issue existed, or that any repair was necessary, in *all* Class Vehicles.[27] *See Alban*, 2011 WL 900114 at *11-12 (TSB acknowledged issue only that issue "*may* be noticed" and did not establish that "all or substantially all" class vehicles were affected). To the contrary, these bulletins inform dealership personnel to conduct specified remedies (*e.g.*, replace the torque converter, flush the cooler lines, install a new filter, or clean the pan and magnet) *only* if a customer experienced a specified issue. *See, e.g., id.* ¶¶ 3, 75.

C.  **Plaintiff Won's UCL Claim Fails Because He Has Adequate Remedies at Law.**

California plaintiff Won cannot pursue his UCL claim (Count 7), which is limited to equitable relief, for the additional reason that he has adequate legal

---

[27] Courts recognize that these bulletins "are generally the result of consumer complaints that cause a manufacturer to investigate, diagnose, and remedy a defect in one of its products," and that "[a]ccepting these advisories as a basis for consumer fraud claims may discourage manufacturers from responding to their customers in the first place." *Alban*, 2011 WL 900114 at *12.

remedies. *See, e.g.*, *Philips v. Ford Motor Co.*, No. 14–CV–02989–LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015). With adequate legal remedies through his state-law and MMWA warranty claims, he cannot request equitable relief in the alternative through a UCL claim. *See, e.g.*, *id.* at *16; *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016); *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) ("[i]t matters not that a plaintiff may have no remedy if her other claims fail.").[28]

## V. PLAINTIFF FRANCIS' CLAIM FOR UNJUST ENRICHMENT UNDER MICHIGAN LAW FAILS.

Plaintiff Francis' unjust enrichment claim under Michigan law fails because he alleges the existence of a written warranty covering his vehicle (Compl. ¶ 36). *Solo v. UPS Co.*, 819 F.3d 788, 796 (6th Cir. 2016); *Matanky*, 370 F. Supp. 3d at 803. He also cannot assert unjust enrichment because he has adequate legal remedies. *Duffie v. Michigan Grp., Inc.*, No. 14-cv-14148, 2016 WL 8259511, at *1 (E.D. Mich. Jan. 15, 2016); *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 906 (Mich. Ct. App. 2006).

---

[28] *See also, e.g.*, *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629-FMO, 2016 WL 7486600, at *13-14 (C.D. Cal. Sept. 27, 2016); *Adams v. I-Flow Corp.*, No. CV09-09550, 2010 WL 1339948, at *7 (C.D. Cal. Mar. 30, 2010).

## VI. PLAINTIFF SIERCHIO'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH UNDER NEW JERSEY LAW FAILS.

Plaintiff Sierchio cannot invoke the implied covenant of good faith to expand the GM Limited Warranty to include design defects (Count 14). *See Fleming Cos. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995) (New Jersey's "implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement"); *Armur Realty, LLC v. Banco do Brasil, S.A.*, No. 09–02792, 2011 WL 1327422, at *4 (D.N.J. Apr. 5, 2011).

## CONCLUSION

For these reasons, plaintiffs' claims should be dismissed with prejudice.

Dated: September 10, 2019         Respectfully submitted,

*/s/ Kathleen Taylor Sooy*
Kathleen Taylor Sooy
Jerome A. Murphy
Jared A. Levine
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
jmurphy@crowell.com
jalevine@crowell.com

Stephanie A. Douglas
BUSH SEYFERTH & PAIGE PLLC
3001 W. Big Beaver Road
Suite 600
Troy, MI 48084

Telephone: (248) 822-7806
Fax: (248) 822-7806
douglas@bsplaw.com

*Counsel for General Motors
LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 10, 2019 the foregoing

was electronically filed with the Clerk of the Court using the CM/ECF system,

which will send notification of such filing to counsel of record.


/s/ Kathleen Taylor Sooy
Kathleen Taylor Sooy

*Counsel for General Motors LLC*