# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 28, 2024

Mr. Kyle Michael Asher
Dykema
Dykema
201 Townsend Street
Suite 900
48933
Lansing, MI 48933

Ms. Stephanie Douglas
Bush, Seyferth
100 W. Big Beaver Road
Suite 400
Troy, MI 48084

Mr. Richard C. Godfrey
Quinn, Emanuel, Urquhart & Sullivan
191 N. Wacker Drive
Suite 2700
Chicago, IL 60606

Mr. Brian Eric Johnson
Gibbs Law Group
1111 Broadway
Suite 2100
Oakland, CA 94607

Mr. Theodore J. Leopold
Cohen Milstein Sellers & Toll
FL
11780 US Highway One
Suite N500
Palm Beach Gardens, FL 33408

Ms. Wendy Liu
Public Citizens Litigation Group
1600 20th Street, N.W.
Washington, DC 20009-0000

Ms. Susan McNeill McKeever
Bush, Seyferth
100 W. Big Beaver Road, Suite 400
Troy, MI 48084

Mr. Douglas James McNamara
Ms. Madelyn Petersen
Cohen Milstein Sellers & Toll
1100 New York Avenue, N.W.
Suite 500
Washington, DC 20005

Mr. R. Allan Pixton
Quinn, Emanuel, Urquhart & Sullivan
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606

Ms. Karina Grace Puttieva
Cohen Milstein Sellers & Toll
1100 New York Avenue, N.W., Suite 500
Washington, DC 20005

Mr. Brian David Schmalzbach
McGuireWoods
800 E. Canal Street
Richmond, VA 23219

Ms. Renee D. Smith
Kirkland & Ellis
333 W. Wolf Point Plaza
Chicago, IL 60654

Mr. John Mark Thomas
Dykema Gossett
2723 S. State Street, Suite 400
Ann Arbor, MI 48104

Mr. Jeffrey Robert White
Center for Constitutional Litigation
777 Sixth Street, N.W., Suite 250
Washington, DC 20001

Mr. Jason Michael Wilcox
Kirkland & Ellis
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

Re:     Case No. 23-1940, *Dennis Speerly, et al v. General Motors, LLC*
        Originating Case No. : 2:19-cv-11044 : 2:19-cv-11802 : 2:19-cv-11808 : 2:19-cv-11875 :
        2:19-cv-12371

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's published opinion together with the judgment which has
been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                         Yours very truly,


                         Kelly L. Stephens, Clerk



                         Cathryn Lovely
                         Deputy Clerk

cc:  Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0204p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DENNIS SPEERLY; JOSEPH SIERCHIO; DARRIN DEGRAND;
DANIEL DRAIN; WAVERS SMITH; RICHARD FREEMAN;
CHRISTOPHER GILES; LOUIS RAY; RICHARD SULLIVAN;
JAMES NORVELL; MICHAEL BANKS; GUY CLARK; MARIA
BARALLARDOS; CARY SHERROW; JASON KEVIN SINCLAIR;
KIMBERLY COULSON; TROY COULSON; ANDRE MCQUADE;
DONALD DYKSHORN; TAIT THOMAS; JAMES PAUL BROWNE;
WILLIAM FREDO; JON ELLARD; RHIANNA MEYERS;
RANDALL JACOBS; MICHAEL PONDER; PHILIP WEEKS;
KATRINA FREDO; JIMMY FLOWERS; STEVEN BRACK; KEVIN
WESLEY; BRIAN LLOYD; GREGORY BUTSCHA; JERRY
CARROLL; KIMBERLY CARROLL; DOMINIC EATHERTON;
THOMAS EDMONDSON; RICHARD FILIAGGI; ROBERT
HIGGINS; DAVID THOMPSON, DONALD SICURA,

> No. 23-1940

*Plaintiffs-Appellees,*

*v.*

GENERAL MOTORS, LLC,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
Nos. 2:19-cv-11044; 2:19-cv-11802; 2:19-cv-11808; 2:19-cv-11875; 2:19-cv-1237;
David M. Lawson, District Judge.

Argued: July 25, 2024

Decided and Filed: August 28, 2024

Before: MOORE, COLE, and MATHIS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Richard C. Godfrey, QUINN, EMANUEL, URQUHART & SULLIVAN, LLP,
Chicago, Illinois, for Appellant. Douglas J. McNamara, COHEN MILSTEIN SELLERS &

TOLL, PLLC, Washington, D.C., for Appellees.  **ON BRIEF:**  Richard C. Godfrey, R. Allan Pixton, QUINN, EMANUEL, URQUHART & SULLIVAN, LLP, Chicago, Illinois, Stephanie A. Douglas, Susan McKeever, BUSH SEYFERTH PLLC, Troy, Michigan, Renee D. Smith, KIRKLAND & ELLIS LLP, Chicago, Illinois, Jason M. Wilcox, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant.  Douglas J. McNamara, Karina Puttieva Madelyn Petersen, COHEN MILSTEIN SELLERS & TOLL, PLLC, Washington, D.C., Theodore J. Leopold, COHEN MILSTEIN SELLERS & TOLL, PLLC, Palm Beach Gardens, Florida, for Appellees. Brian D. Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia, John M. Thomas, DYKEMA GOSSETT PLLC, Ann Arbor, Michigan, Kyle M. Asher, DYKEMA GOSSETT PLLC, Lansing, Michigan, Wendy Liu, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., Jeffrey R. White, AMERICAN ASSOCIATION FOR JUSTICE, Washington, D.C., for Amici Curiae.

––––––––––––––––

## OPINION

––––––––––––––––

KAREN NELSON MOORE, Circuit Judge.  Plaintiffs from twenty-six states seek class certification in their suit against General Motors, LLC ("GM"), for alleged defects present in the 8L45 and 8L90 transmissions of vehicles purchased from GM between 2015 and 2019. According to the Plaintiffs, they experienced "shudder" and shift quality issues when driving these vehicles that persisted even if and when they brought the car in to be repaired.  GM claims that the putative class lacks standing and that there exist a number of individualized issues between both the Plaintiffs and state laws that would predominate over any common issues of law or fact in the Plaintiffs' putative class-action suit.  The district court determined that the Plaintiffs have standing and can satisfy Federal Rule of Civil Procedure 23 and certified the class.  GM appeals the decision and claims that the district court abused its discretion in certifying the class.  We hold that the Plaintiffs have standing and that the district court did not abuse its discretion in certifying the class action and AFFIRM the class certification.

## I. BACKGROUND

### A.  Factual Background

At issue in this case are two purported defects "related to the 8L transmissions in GM vehicles that were manufactured between 2015 and 2019."  R. 272 (Mot. Hr'g for Class Cert. at 6) (Page ID #20262).  The Plaintiffs have alleged that their transmissions cause their vehicles to

"slip, buck, kick, jerk and harshly engage," as well as exhibit other issues.  R. 41 (Consolidated Am. Class Action Compl. ¶ 4) ("CACAC") (Page ID #2251).  According to a press release by GM, the 8L90 transmission "enhance[d] performance and efficiency," R. 41-4 (Aug. 2014 GM Press Release at 1) (Page ID #3098), and the smaller 8L45 transmission similarly "offer[ed] an estimated 5-percent fuel economy benefit over comparable six-speed automatic transmissions," R. 41-6 (May 2015 GM Press Release at 4) (Page ID #3111).

In 2019, GM's quality organization issued "a speak up for safety . . . for a warranty issue of a shudder in the 8-Speed transmissions."  R. 177-3 (Torque Converter Shudder at 1) (Page ID #7167).  Drivers of cars with the "shudder" "experience[d] a shake / shudder feeling that may be described as driving over rumble strips or rough pavement."  *Id.*  Additionally, consumers experienced issues with shift quality, including "'[h]esitation' during [their] first shift of the day [] or garage maneuver" and "'[l]urch,' 'lunge' or 'jerk' during the first shift of the day [], coast down deceleration [] or garage shift maneuver."  R. 204-16 (Transmission Surge at 1) (Page ID #11767).  Complaints by Plaintiffs regarding vehicles manufactured from 2015 to 2019 with the 8L transmission included reports that that their "car ha[d] been having a lot of vibrations, sputtering, rumbling while driving," R. 41 (CACAC at 58) (Page ID #2307); that "the vehicle was extremely slow to accelerate," *id.* at 62 (Page ID #2311); and that the "8 speed transmission clunk[ed] when shifting" and "at times fe[lt] like you got rear ended," *id.* at 67 (Page ID #2316).  GM reports from 2015 to 2019 demonstrate that the 8L transmission program was experiencing shift quality and shudder issues.  R. 177-7 (8RWD Transmission Summs.) (Page ID #7338–47).  At the onset of this case, the Plaintiffs viewed their complaints about the shudder and shift quality to be "two manifestations of a common problem" but now characterize these issues as "two distinct defects" that both stem from the 8L transmissions.  R. 272 (Motion Hr'g at 7) (Page ID #20263).

Consumers began to submit warranty claims for the shudder, leading GM to shift from attempting to "diagnose and confirm" the problem to deciding that they should change the fluid that the transmissions used.  R. 224-1 (Gonzalez Dep. at 196–97) (Page ID #15485–86); R. 215-1 (Radecki Dep. at 315) (Page ID #14058).  One metric that GM uses in its warranty analysis is called Incidents Per Thousand Vehicles ("IPTV"), which "measures the number of warranty

claims per thousand vehicles made for a given set of vehicles within a certain period of time" (here, twelve months). R. 182-1 (Wachs Expert Rep. at 11–12) (Page ID #8778–79). During the relevant time period, GM's goal IPTV for "8-speed transmissions . . . ranged from 4.9 to 5.5 IPTV," which equates to roughly 0.5%. *Id.* at 12 (Page ID #8779). The measured IPTVs for the 8L transmissions were significantly higher than GM's target during the class period, R. 224-14 (Radecki Dep. at 207–08) (Page ID #15603–04), with one of their engineers estimating that the warranty numbers "at the height of the 8-speed shudder problem" were at around 50%, R. 224-5 (Anguish Dep. at 174) (Page ID #15527).

GM also measures the IPTV rate against an issue occurrence framework when determining whether a particular defect poses a safety risk for consumers. In a 2019 report, GM categorized the shudder problem as occurrence #5, R. 177-3 (Torque Shudder Converter) (Page ID #7167), which indicates that the "[i]ssue occurs at an extremely high rate," R. 174-7 (Safety Categorization) (Page ID #6197). William McVea ("McVea"), an engineer who served as the Plaintiffs' expert, evaluated GM cars with 8L transmissions, R. 180-1 (McVea Report at 4–5) (Page ID #8297–98), and concluded that the automatic transmission fluid ("ATF") had "degraded prematurely over time and in the presence of water typically caused by humidity at levels even below specifications written by GM, and well before the useful life of the vehicle," *id.* at 7 (Page ID #8300). After the relevant class period, GM nearly doubled its IPTV goals. R. 182-1 (Wachs Expert Rep. at 12) (Page ID #8779).

Emails among GM employees indicate that they were aware of the shudder problem but were unsure how to communicate about the issue to consumers. *See* R. 224-18 (2016 TCC Emails at 1) (Page ID #15641). According to a response in Corvette Forum, Corvette's chief engineer in 2016 stated that if drivers were "not having a problem now, it is very unlikely to occur later." R. 224-19 (Corvette Forum Ask Tadge) (Page ID #15649). In a similar forum for the Camaro 8-speed automatic transmission, an "Ask AI" round stated that, for Camaros, GM had "developed a service . . . [that] eliminate[d] most of the shudder concerns." R. 224-20 (Camaro Forum Ask AI) (Page ID #15651). According to a GM employee, GM did not eliminate the shudder issue, but "the frequency went down considerably, especially [] with the newer vehicles." R. 224-17 (Goodrich Dep. at 221) (Page ID #15632).

   At least some of the vehicles with the shudder problem have experienced other issues that may have contributed to or caused the shudder, such as tire imbalance.  *See* R. 245-19 (2017 Sinclair Repair Order); R. 245-20 (2019 McQuade Repair Order) (Page ID #17436–37).  McVea's expert report similarly included a survey of thirty-six vehicles that owners claimed experienced either the shudder or hard shift issue, which stated that not all the vehicles actually exhibited the issue their owner claimed.  R. 180-1 (McVea Report at 106–07) (Page ID #8399–8400).  However, fixes for these other issues did not resolve the initial complaint of a shudder or shift for all of the Plaintiffs.  For example, a repair order for Andre McQuade ("McQuade") cited that his driving with "newer tires in the front and bald tires in the rear" was the cause of his 2019 Cadillac's issue.  Appellant Br. at 11; R. 245-20 (McQuade Repair Order at 1) (Page ID #17436).  However, McQuade stated that the "rumble" he was experiencing "didn't go away with brand-new tires freshly mounted and balanced."  R. 225-14 (McQuade Dep. at 143) (Page ID #16079).

   GM attempted to resolve the shudder problem with an ATF called "Option B," which helped to alleviate the shudder, but that "ultimately was not the fix based on what [GM] determined the root cause [of the shudder] to be."  R. 245-3 (Goodrich Dep. at 41) (Page ID #16991); *see also* R. 224-21 (Option B Emails at 1) (Page ID #15653).  In December 2018, GM replaced "Option B" with "Mod1a," an ATF that "corrected the 8L TCC [torque converter clutch] shudder problem."  R. 220-3 (Lange Expert Rep. at 29–30) (Page ID #14432–33).  Both Plaintiffs and GM agree that Mod1a resolved the shudder for new vehicles and for warranty repairs.  R. 222 (Certification Mot. at 15–16) (Page ID #15388–89).  Tim Anguish, a GM employee, suggested that the "option of flushing every 8spd [GM had] made with [the new ATF] [was] best for [their] customers."  R. 206-11 (2018 Anguish Email) (Page ID #12487).  However, the new ATF was ultimately not made available "to all owners of affected vehicles who [] experienced or are likely to experience the defective friction system within the 8L product family automatic transmissions."  R. 180-1 (McVea Report at 7) (Page ID #8300).  Instead, GM opted to "[f]lush and [f]ill" unsold vehicles.  R. 177-3 (Torque Converter Shudder) (Page ID #7168).

   Mod1a did not fix the shift quality issues, which were "addressed with continuous improvements, hardware and software, some in production changes and some through service

bulletins." R. 220-3 (Lange Expert Rep. at 30) (Page ID #14433). The "root cause" of the harsh shift, which was given an occurrence 4 rating in 2021, was "[t]he reduced capability of purging trapped air or overfilling clutch(es)."[1] R. 177-6 (Alleged Lunge Report at 1) (Page ID #7295). In response to the shift quality issue in 8L45 and 8L90 8-speed transmissions, GM issued ninety-five "Technical Service Bulletins" ("TSB") between 2014 and 2020. R. 220-3 (Lange Report at 201) (Page ID #14604).[2] Thirty of these TSBs "addressed customers' concerns related to harsh shifts and included diagnostic steps to root [out the] cause [of] the issue and the procedures to be performed by the technician." *Id.* at 202 (Page ID #14605). However, GM's 2021 Open Investigative Report with regard to the harsh shift stated that "[u]ltimately, some of the issues could not be resolved without a major redesign of the transmission, which was approved in early 2018 (8RWD Gen 2)." R. 177-6 (Root Cause) (Page ID #7314).

## B. Procedural Background

In April 2019, the Plaintiffs filed a class action lawsuit against GM. R. 1 (Compl.) (Page ID #1–197). After the district court consolidated several similar cases, the Plaintiffs filed an amended class action complaint ("CACAC") on September 30, 2019, R. 41 (CACAC) (Page ID #2235–2810). The Plaintiffs proposed a 30-state class initially, as well as representatives and causes of action for each state; after plaintiffs from certain states dismissed their claims without prejudice, the proposed class decreased to 26 states. *Id.* The states and causes of action included in the class definition that the district court eventually certified are:

(1)  Alabama (Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-9-1 *et seq.*; and breach of express warranty, Ala. Code § 7-2-313);

(2)  Arizona (Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1521 *et seq.*);

---

[1] Although the class date range is 2015-2019, this report includes cars that were built from 2018 to 2021. R. 177-6 (Alleged Lunge Report at 1) (Page ID #7295).

[2] TSBs provide guidance on how to correct certain issues. Benjamin Hunting, *What's the Difference Between a Technical Service Bulletin vs a Recall?*, CAPITALONE (Sept. 12, 2022), https://www.capitalone.com/cars/learn/finding-the-right-car/whats-the-difference-between-a-technical-service-bulletin-vs-a-recall/1750. Often, if the affected vehicle is still under warranty, TSB-related repairs will be covered. *Id.*

(3) Arkansas (Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Stat. § 4-88-107 *et seq.*; and breach of implied warranty, Ark. Stat. § 4-2-314);

(4) Colorado (breach of express warranty, Colo. Rev. Stat. § 4-2-313; and breach of implied warranty, Colo. Rev. Stat. § 4-2-314);

(5) Delaware (Delaware Consumer Fraud Act ("DCFA"), Del. Code Ann. tit. 6, § 2511; breach of express warranty, Del. Code. Ann. tit. 6, § 2-313; and breach of implied warranty, Del. Code Ann. tit. 6, § 2-314);

(6) Florida (Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*);

(7) Georgia (breach of express warranty, Ga. Code Ann. § 11-2-313; and breach of implied warranty, Ga. Code Ann. § 11-2-314);

(8) Idaho (Idaho Consumer Protection Act ("ICPA"), Idaho Code § 48-601 *et seq.*; and breach of express warranty, Idaho Code § 28-2-313);

(9) Illinois (Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1 *et seq.*; breach of express warranty, 810 Ill. Comp. Stat. § 5/2-313; breach of implied warranty, § 5/2-314; and fraudulent concealment);

(10) Kansas (Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50-623 *et seq.*; breach of express warranty, Kan. Stat. Ann. § 84-2-313; and breach of implied warranty, Kan. Stat. Ann. § 84-2-314);

(11) Kentucky (Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. § 367.110 *et seq.*; and breach of express warranty, Ky. Rev. Stat. § 335.2-313);

(12) Louisiana (Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Stat. Ann. § 51:1401 *et seq.*; and fraudulent concealment);

(13) Maine (Maine Unfair Trade Practices Act ("MUTPA"), Me. Stat. tit. 5, § 205-A *et seq.*; breach of express warranty, Me. Stat. tit. 5, § 2-313; and breach of implied warranty, Me. Stat. tit. 5, § 2-314);

(14) Michigan (Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.903 *et seq.*; and breach of implied warranty, Mich. Comp. Laws § 440.2313);

(15) Minnesota (Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.68 *et seq.*; breach of express warranty, Minn. Stat. § 336.2-313; and breach of implied warranty, Minn. Stat. § 336.2-314);

(16) New Hampshire (New Hampshire Consumer Protection Act ("NHCPA"), N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*; breach of express warranty, N.H. Rev. Stat. Ann. § 382-A:2-313; and breach of implied warranty, N.H. Rev. Stat. Ann. § 382-A:2-314);

(17) New Jersey (New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.*; breach of express warranty, N.J. Stat. Ann. § 12A:2-313; and breach of implied warranty, N.J. Stat. Ann. § 12A:2-314);

(18) New York (New York General Business Law § 349; breach of express warranty, N.Y. U.C.C. § 2-313; breach of implied warranty, N.Y. U.C.C. § 2-314; and fraudulent concealment);

(19) North Carolina (North Carolina Unfair and Deceptive Acts and Practices Act ("NCUDPA"), N.C. Gen. Stat. § 75-1.1 *et seq.*);

(20) Oklahoma (Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15, § 751 *et seq.*; breach of express warranty, Okla. Stat. tit. 12A, § 2-313; and breach of implied warranty, Okla. Stat. tit. 12A, § 2-314);

(21) Pennsylvania (Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 Pa. Stat. Ann. § 201-1 *et seq.*);

(22) South Carolina (breach of express warranty, S.C. Code Ann. § 36-2-313; and breach of implied warranty, S.C. Code Ann. § 36-2-314);

(23) Tennessee (Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.*; and fraudulent concealment);

(24) Texas (Texas Deceptive Trade Practices Act ("TDTPA"), Texas Bus. & Com. Code § 17.41 *et seq.*; and breach of express warranty, Texas Bus. & Com. Code § 2.313);

(25) Washington (Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010 *et seq.*; breach of express warranty, Wash. Rev. Code § 62a.2-313; and fraudulent concealment); and

(26) Wisconsin (Wisconsin Deceptive Trade Practices Act ("WDTPA"), Wis. Stat. § 100.18).

*See Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 502–03 (E.D. Mich. 2023).

GM filed a motion to dismiss, R. 53 (Mot. to Dismiss) (Page ID #3197–3267), which the district court granted in part and denied in part in November 2020, R. 92 (Order & Op.) (Page ID #4176–4225). The November 2020 opinion dismissed "claims for class-wide money damages under the Colorado Consumer Protection Act," "the implied warranty claims of all plaintiffs under the laws of Alabama, Arizona, Connecticut, Idaho, Kentucky, North Carolina, Washington, and Wisconsin," and one Tennessee plaintiff's implied warranty claim, and denied the motion to dismiss as to the rest of the claims. *Id.* at 50 (Page ID #4225). The parties engaged in several rounds of stipulated dismissals of certain individual plaintiffs, *see, e.g.*, R. 87 (Order of Partial Dismissal) (Page ID #4149–50); R. 103 (Order of Partial Dismissal) (Page ID

#4339–40); R. 151 (Stipulation of Dismissal) (Page ID #5269–74), and the court also granted a motion to file a second addendum to add an additional plaintiff, R. 163 (Order) (Page ID #5452–53). In February 2022, the plaintiffs moved to certify the class and appoint class representatives and counsel. R. 223 (Mot. to Certify) (Page ID #15414–77). GM filed a response. The parties each also filed motions to exclude certain expert witnesses, which the court denied in July 2022. R. 267 (Order & Op.) (Page ID #20194–20240).

The district court first evaluated the Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 23(a) and concluded that the Plaintiffs had satisfied all four of its requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Speerly*, 343 F.R.D. at 506–07. The Plaintiffs sought certification under Federal Rule of Civil Procedure 23(b)(3), which permits class certification when a "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The three common questions that the district court identified as "crucial to the pleaded causes of action in every jurisdiction where class certification ha[d] been sought" were: "(1) whether the 8L45 and 8L90 transmission design has one or more defects that render the class vehicles unsuitable for the ordinary use of providing safe and reliable transportation[;] (2) whether [GM] knew about the defects and concealed its knowledge from buyers of class models[;] and (3) whether the information withheld would have been material to a reasonable car buyer." *Speerly*, 343 F.R.D. at 508. The district court found that the Plaintiffs had "met their burden to demonstrate predominance of issues," because GM's "general objections" were "not tied to any peculiarities of state law, but merely assert[ed] that certain elements common to all of the various causes [were] not amenable to common proofs." *Id.* GM had a number of additional arguments against certifying the class, including standing, manifestation, average damages, arbitration clauses, design variations, knowledge of defect, and vehicle sales, all of which the district court rejected. *Id.* at 522–26.

The district court granted the motions to certify twenty-six "statewide subclasses," and appointed both class representatives and lead class counsel. *Id.* at 526–30. Each subclass was defined as either the original purchasers or "all purchasers and current owners," depending on

the state, of "2015-2019 [GM] vehicles with 8L transmissions, specifically: the 2015-2019 Chevrolet Silverado; 2017-2019 Chevrolet Colorado; 2015-2019 Chevrolet Corvette; 2016-2019 Chevrolet Camaro; 2015-2017 Cadillac Escalade and Escalade ESV; 2016-2019 Cadillac CTS; 2016-2018 Cadillac CT6; 2015-2019 GMC Sierra; 2015-2017 Yukon and Yukon XL; and 2017-2019 GMC Canyon[] from authorized GM dealers before March 1, 2019." *Id.* GM timely sought and was granted permission to appeal. R. 294 (6th Cir. Order) (Page ID #20542).

## II. DISCUSSION

### A. Standard of Review

A certification of a class is appropriate if the district court, "after conducting a 'rigorous analysis,'" determines that Federal Rule of Civil Procedure 23's requirements have been met. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 504 (6th Cir. 2015) (quoting *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013)). We review grants of class certification for abuse of discretion. *Id.* "An abuse of discretion occurs when we are left with the definite and firm conviction that the [district] court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where it improperly applies the law or uses an erroneous legal standard." *Id.* (alterations in original) (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)).

### B. Rule 23 Class Certification

The Federal Rules of Civil Procedure require that "plaintiff[s] seeking to certify a class must satisfy four requirements under Rule 23(a) and at least one of several requirements under Rule 23(b)." *In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, 708 F.3d 704, 706 (6th Cir. 2013). Federal Rule of Civil Procedure 23(a) permits members of a class to sue "as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Federal Rule of Civil Procedure 23(b) then provides that class actions can be maintained if: "(1) prosecuting separate actions by . . . individual class members

would create a risk of" inconsistent adjudications on an individual basis or adjudications that would be "dispositive of" or "substantially impair or impede" other class members' interests; "(2) the party opposing the class has acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate" for the whole class; or "(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

### C. Article III Standing

GM claims that the district court violated Article III standing principles and certain state laws when it granted class certification to the twenty-six subclasses, because "most class members ha[d] never had any transmission problems in their own vehicles." Appellant Br. at 24–33. The district court rejected GM's Article III standing argument. It reasoned that "every named plaintiff" had testified that their vehicle experienced at least one of the alleged defects. *Speerly*, 343 F.R.D. at 522. Accordingly, the district court determined that the Plaintiffs had standing because: (1) the Plaintiffs' evidence supported a suggestion that "the defect is caused by a common design failure and can be expected to afflict every class vehicle sold within its useful lifetime"; (2) whether any plaintiff had recouped any loss was "immaterial to the Rule 23 analysis" that the district court was conducting; and (3) the "appropriate opportunity to address claims of absent class members whose vehicles never have manifested any defect is" during summary judgment. *Id.* at 522–23. On appeal, the Plaintiffs argue that the alleged defects do not have to manifest for all class members for a class to have Article III standing. Appellee Br. at 18–19.

For plaintiffs to establish that they have Article III standing to bring a claim, they must show that they have "(1) [] suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606–07 (6th Cir. 2007)).

We have not yet concretely decided whether all class members must actually experience an alleged defect in order to establish Article III injury-in-fact for a proposed class. GM argues that the district court's decision to grant the class certification "is irreconcilable with" the Supreme Court's ruling in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), because "[t]he purchase of a vehicle with alleged defects posing a potential future risk of a problem is not a concrete injury-in-fact for every purchaser." Appellant Br. at 27. However, the case before us differs from *TransUnion*. In *TransUnion*, individuals were attempting to certify a class for their claim that TransUnion had maintained misleading alerts about the purported class members in TransUnion's "internal credit file[s]." 594 U.S. at 433. The Court held that individuals whose files had been distributed to "third-party businesses" had sufficiently alleged a concrete injury-in-fact, but that the individuals whose files had not been distributed to any other parties had not suffered "concrete harm for purposes of Article III." *Id.* at 431–34. Unlike the *TransUnion* plaintiffs, all of the named putative class members have bought certain GM-manufactured cars that contain either an 8L45 or 8L90 transmission within the relevant timeframe (2015 to 2019), have experienced one or both of the issues with the 8L transmission in their car, and claim that they would not have bought their vehicle if they had known about these issues. R. 41 (CACAC at 160–222) (Page ID #2409–71); R. 223 (Mot. to Certify Class at 12–14) (Page ID #15449–51); *see also Speerly*, 343 F.R.D. at 501.[3] The district court certified the class based on these facts. *Speerly*, 343 F.R.D. at 505.

Although we have never resolved in a published case whether diminished value suffices to establish standing, we have discussed the issue before in *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 581 (6th Cir. 2013). There, we stated that "paying more . . . because of [a] company's misrepresentation establishes a cognizable injury." *Id.* Other circuits addressing this issue have held that diminished value, even if an alleged defect never actually manifests for some of the class members, is sufficient to establish standing. *See, e.g.*, *In re Evenflo Co., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 54 F.4th 28, 35 (1st Cir. 2022) (stating that "[t]his court has repeatedly recognized overpayment as a cognizable form of Article III injury" and concluding

---

[3]Thirty-nine Plaintiffs appeared on the CACAC, but the Plaintiffs omitted Connecticut, Indiana, Ohio, and Oregon from their motion to certify the class, leaving thirty-three Plaintiffs in the class certification before the district court and before us now on appeal. R. 223 (Mot. to Certify Class at 2–8) (Page ID #15415–21).

that "overpayment for a product—even one that performs adequately and does not cause any physical or emotional injury—may be a sufficient injury to support standing"); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694–95 (7th Cir. 2015) (stating that "[i]n some situations, we have held that financial injury in the form of an overcharge can support Article III standing," and noting that most of the relevant caselaw "involve[d] products liability claims against defective or dangerous products").

All named Plaintiffs in this class action have alleged that they experienced the shudder, shift quality issues, or both in their vehicles with an 8L45 or 8L90 transmission. Before the district court, the Plaintiffs produced evidence supporting a suggestion that even if defects had not yet manifested in vehicles, they were likely to develop at some point. *See* R. 182-1 (Wachs Expert Rep. at 51) (Page ID #8818). And certifying the class is consistent with our opinions on the requirements of Federal Rule of Civil Procedure 23. *See Whirlpool*, 722 F.3d 838; *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006). In each of these cases, in the context of determining whether parties had satisfied Federal Rule of Civil Procedure 23, we upheld a district court's order granting class certification, provided that "the claims litigated by the class are based on the presence of a defect regardless of manifestation during the warranty period." *Daffin*, 458 F.3d at 553–54; *see also Whirlpool*, 722 F.3d at 856 ("If defective design is ultimately proved, all class members have experienced injury as a result of the decreased value of the product purchased.").

These decisions support the conclusion that alleging overpaying for a defective product sufficiently provides the Plaintiffs with Article III standing. This outcome is consistent with other circuits who have already ruled on the issue. And, as the district court pointed out in reaching its decision, the appropriate time to "address claims of absent class members whose vehicles never have manifested any defect is a Rule 56 motion for summary judgment." *Speerly*, 343 F.R.D. at 522. We AFFIRM the district court's determination that the Plaintiffs had sufficient Article III standing.

### D.  Manifest Defect Rules in State Law

Next, GM argues that the district court erred in concluding that the manifest defect rules of certain class states did not preclude it from certifying this class, and that this court should reverse the class certification with regard to claims from states that require a manifest defect. Appellant Br. at 28–30.  According to GM, at least twelve of the states have manifest defect rules, which "bar[] economic claims where an alleged defect has not actually manifested in the plaintiff's own product."  *Id.* at 28.  The Plaintiffs contend that the "'manifest defect' barrier often falls where a present economic loss has been alleged" and that it was not an abuse of discretion for the district court to determine that the manifest defect rule was not "hegemonic" with respect to the claims that the class sought to have certified.  Appellee Br. at 29–30.  The Plaintiffs also point out that the district court can revise the class if it did clearly err when interpreting a certain state's law.  *Id.* at 30.

That there are different state laws involved does not automatically mean that the district court erred in certifying the class—the relevant question is whether the district court conducted "a rigorous analysis" of the claims under Federal Rule of Civil Procedure 23 and did not abuse its discretion in concluding that common questions of law and fact predominated over individualized issues.  *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 278–79 (6th Cir. 2018).  In discussing the "existence of a defect," the district court noted that "[t]here [was] ample evidence already in the record from which a jury reasonably could find that (1) the alleged defects are inherent in universal aspects of the design of the 8L transmissions, (2) the defendant identified the 'root causes' of the defects early in the lifespan of the class models . . . , and (3) the defect poses a significant safety risk to drivers of the class vehicles."  *Speerly*, 343 F.R.D. at 512. It then engaged in a lengthy discussion about the Plaintiffs' proposed expert evidence and stated that there was ample evidence to support a finding that there were "one or more universal defects in the 8L transmission design," and that they were "pervasive and reasonably expected to occur sooner or later in all class vehicles sold."  *Id.* at 517.  With regard to the named Plaintiffs, all of whom have actually purchased and experienced issues with the class vehicles, these issues predominate over a manifest defect rule, which is unlikely to be relevant.

GM cites a number of primarily unpublished cases to support its claim that a manifest defect rule precludes subclasses from at least twelve states—Alabama, Arkansas, Delaware, Florida, Illinois, Maine, Minnesota, New Jersey, New York, Oklahoma, South Carolina, Texas, and Wisconsin—from being included in the class certification. Appellant Br. at 28–29. However, the Plaintiffs in this case are distinguishable from the plaintiffs in that cited caselaw. In the present case, all of the named Plaintiffs have purchased cars from GM and alleged that they have actually experienced a shudder, shift quality issue, or both. By contrast, a number of the cases that GM cited in its briefs involve no-injury classes that were largely unable to demonstrate a present economic loss or were otherwise ineligible to bring a claim, independent of the manifest defect issue. *See, e.g.*, *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161–62 (Ark. 2005) (finding that, in a no-injury class action, the Arkansas Deceptive Trade Practices Act did not provide a private cause of action "[w]here the only alleged injury is the diminution in value of the product"); *Dalton v. Ford Motor Co.*, No. Civ.A. 00C-09-155WCC, 2002 WL 338081, at *6 (Del. Super. Ct. Feb. 28, 2002) (rejecting a claim when the Plaintiffs had not "allege[d] in the Original Complaint that any member of the purported class had actually sold a vehicle at a reduced value," and had not "state[d] the amount of their damages"); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 617 (8th Cir. 2011) (distinguishing "no injury plaintiffs" from plaintiffs who had alleged that the product they bought exhibited a defect and that that defect was "already manifest in all systems" in the context of Minnesota claims); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 236–37 (Wis. 2004) (rejecting a manifest defect claim when "[t]he plaintiffs ha[d] not alleged any personal injury or property damage caused by the defective engines, nor ha[d] they alleged that their motorcycle engines have actually failed or malfunctioned in any way"). Further, the district court here concluded that the "manifest defect" issue was more properly suited for "a Rule 56 motion for summary judgment" and did not need to be determined at the class certification stage, which is consistent with our class action precedent. *Speerly*, 343 F.R.D. at 522–23 (citing *Whirlpool*, 722 F.3d at 857). Accordingly, we do not view this conclusion as an abuse of the district court's discretion.

For similar reasons, we also reject GM's claim that the manifest defect problem "exposes a raft of individualized issues, including which class members had a transmission problem, whether such problems were caused by any transmission defect . . . , and whether state laws

require manifestation to recover under the claims advanced here." Appellant Br. at 31. Although there will inevitably be some variation among each of the Plaintiffs' claims, the core issues identified by the district court are: "(1) whether the 8L45 and 8L90 transmission design has one or more defects that render the class vehicles unsuitable for the ordinary use of providing safe and reliable transportation[;] (2) whether the defendant knew about the defects and concealed its knowledge from buyers of class models[;] and (3) whether the information withheld would have been material to a reasonable car buyer." *Speerly*, 343 F.R.D. at 508. The two out-of-circuit cases that GM primarily relies on to make this argument are distinguishable from the case before us. In *Brown v. Electrolux Home Products, Inc.*, the Eleventh Circuit decertified a class because it was far from clear, regarding a claim that was based on false representations in advertisements, that the putative class members had actually seen any of the advertisements from the company and certain of the states involved in the class action required reliance on those advertisements as a factor in the claim. 817 F.3d 1225, 1237–38 (11th Cir. 2016). *Tershakovec v. Ford Motor Co.* addressed a similar issue, where the claim was again based on false advertisements and certain state statutes required showing that consumers had relied on those relevant advertisements. 79 F.4th 1299, 1307 (11th Cir. 2023).

Here, GM does not identify individualized issues that predominate over the common questions of law and fact such that they would compel us to find that the district court had abused its discretion in certifying the class. At this point in the proceedings, the district court did not abuse its discretion in determining that a manifest defect rule did not preclude it from certifying the class. If the manifest defect rule ultimately becomes a problem, that state's subclass can be culled, either via a Rule 56 motion for summary judgment or disposal after trial. We AFFIRM the district court's determination that the manifest defect rule of certain states does not predominate over the common questions of law and fact involved in this class action.

## E.  Individualized Issues

GM also argues that the district court erred in certifying the class because numerous individual issues predominate over the common questions of law and fact that the district court identified and because the district court "assumed away or left for another day the most difficult predominance problems." Appellant Br. at 33–51.

### 1. Defect Differences

First, GM argues that our decision in *In re Ford Motor Co.* supports a determination that the district court abused its discretion because the Plaintiffs are alleging two distinct defects—the shudder and the shift quality issues. Appellant Br. at 34–36. The Plaintiffs contend that GM's argument both "misstates what [the district court] did, and what is required." Appellee Br. at 33.

In *Ford*, we vacated a class certification when the district court's analysis of the claims did "not make clear that the three certified issues can each be answered 'in one stroke.'" *In re Ford Motor Co.*, 86 F.4th 723, 727 (6th Cir. 2023) (per curiam) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In reaching this conclusion, we did not reject the notion that a class could "alleg[e] two distinct theories of design defect" but rather took issue with that district court's "surface-level approach" to certifying the class. *Id.* at 728. Here, in contrast, the district court did not abuse its discretion because, unlike the district court in *Ford*, it conducted a rigorous analysis of the two separate alleged defects. At the motion hearing for class certification, the district court inquired into and considered arguments about whether the shudder and shift quality issues were the result of one individual defect or two separate defects in the 8L transmissions. R. 272 (Hr'g Tr. Mot. for Class Cert. at 7–10, 47–48) (Page ID #20263–66, 20303–04). And in its order, the district court discussed the "ample evidence" in the record that would permit a reasonable jury to conclude that the shudder and shift quality issues were caused by a "universal design flaw" in the class vehicle transmissions. *Speerly*, 343 F.R.D. at 512–17. This discussion of the shudder and shift quality defects' commonality considered evidence such as depositions by GM employees, internal GM documents and emails, and expert reports. The grant of class certification also stated that each of the named Plaintiffs had experienced one *or both* of the defects. *Id.* at 507. If, later in the proceedings, it becomes apparent that the defects do not both stem from the 8L transmissions, or there are other issues that arise with considering the two defects in the same class action, the district court can divide the class into two subclasses. At this point in the proceedings, though, the district court did not abuse its discretion in considering the two defects stemming from the same transmissions and determining that they could be addressed in the same class action.

### 2.  Differences in Perception

Next, GM argues that the district court abused its discretion in certifying the class because the Plaintiffs will have different and subjective perceptions of the described shudder and shift quality issues, which will require individualized analyses that will predominate over the common issues that the district court identified.  Appellant Br. at 36–38.  In discussing the "typical proof of 'materiality' of a misstated or omitted fact for fraudulent concealment and statutory consumer fraud claims," the district court engaged in an analysis of the relevant state laws and concluded that the relevant inquiry "turns on consideration of the mindset of an objectively reasonable consumer deciding whether to buy the defendant's product."  *Speerly*, 343 F.R.D. at 520–21.  Because it would be applying this "objectively reasonable consumer" standard, the district court determined that the "material inquiry" was "susceptible to class-wide proofs independent of the circumstances or preferences of individual car buyers."  *Id.* at 521–22.

On appeal, GM focuses on the fact that there are different makes, models, and years of cars included in the class definition, and that "whether [the] class members notice, report, or care about either symptom that could be caused by the alleged 'shudder' and 'shift quality' defects rests on subjective perceptions and experiences."  Appellant Br. at 37.  As to GM's first point, the Plaintiffs' claims, and the confines of the class that the district court certified, rest on alleged defects with the 8L45 and 8L90 transmissions, rather than on alleged issues with any particular make, model, and/or year of vehicle.  As to GM's second point, and as explained in detail in the district court's grant of the class certification, the relevant question in resolving this issue is whether the alleged defect would have impacted an *objective* consumer's decision to purchase the product.  *Speerly*, 343 F.R.D. at 520–21 (reciting the standard in each of the twenty-six states' "relevant consumer protection statutes").  Exactly how, and to what extent, each of the individual Plaintiffs experienced a shudder or shift quality issue is irrelevant to the inquiry that the district court identified as central to the class action.  The district court did not abuse its discretion in determining that the subjective aspects of the claims did not predominate over the common questions of law and fact to be resolved by the class action.

No. 23-1940          *Speerly, et al. v. General Motors, LLC*          Page 19

## F. Substantive Variations in State Laws

GM also claims that the district court abused its discretion in failing to consider the fact that several states' laws required consideration of additional elements that would allegedly predominate over the questions central to resolving the class action.

### 1. Opportunity to Present

GM claims that seventeen of the twenty-six states included in the class definition do not permit GM to be held liable on an express warranty claim "[i]f a class member did not seek or give GM an opportunity to repair" their vehicle. Appellant Br. at 39. The Plaintiffs contend that the district court had sufficiently considered this point before ultimately concluding that "the evidence showed 'that the problems with the 8L design cannot be fixed, or avoided for good, absent service actions that GM deemed too costly to deploy.'" Appellee Br. at 48 (quoting *Speerly*, 343 F.R.D. at 525).

GM's own reports and other internal documents support the conclusion that both the shudder and the shift quality issue ultimately required design changes. The shudder was resolved by changing the ATF to Mod1a in 2019, R. 220-3 (Lange Expert Rep. at 29–30) (Page ID #14432–33), and at least some issues with the shift quality "could not be resolved without a major redesign of the transmission, which was approved in early 2018," R. 177-6 (Root Cause) (Page ID #7314). We have not yet opined on whether consumers who do not "present" a defective product should be excused in the event that there is a futility element to their claim— that is, it would be pointless for them to bring their product in for repair. The out-of-circuit cases that GM cites in claiming that the statutes preclude class certification do not appear to implicate such a futility issue. *See, e.g.*, *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1268–71 (10th Cir. 2020) (concluding that the plaintiffs had not shown a breach of warranty when they had failed to present their RV for repairs after they had experienced "a loud[,] squeaky noise, an inoperable GPS and furnace, and screens falling off the windows").

We hold that the district court did not abuse its discretion in concluding that the presentment issue did not preclude it from certifying the class. In reaching its conclusion that there was not a predominance problem at the class certification stage, the district court pointed to

evidence in the record that demonstrated that the alleged defect was not resolved when the class members brought their vehicles into a shop for repairs, but in fact required a design change by GM. *Speerly*, 343 F.R.D. at 525. It then concluded that the presentment issue was irrelevant at this point in the proceedings because it was a merits issue that was irrelevant for the purposes of class certification. *Id.* We have stated before that class certification proceedings are not "a dress rehearsal for the trial on the merits." *Whirlpool*, 722 F.3d at 851–52 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). It was not an abuse of the district court's discretion to decline to rule on the merits when the issue before it was class certification. Because the district court "considered relevant merits issues with appropriate reference to the evidence" before it and conducted a "rigorous analysis" of the relevant statutes, it did not abuse its discretion when it declined to find that the presentment issue precluded it from certifying the class. *See id.* at 852. Any further issues with presentment can be determined at the merits stage.

### 2. Individual Reliance and/or Causation in State Laws

GM also argues that variations among the several state laws under which the Plaintiffs bring their claims, specifically those that require a showing of "individual reliance or causation," will lead to individualized issues regarding each of the relevant statutes that will predominate over common questions. Appellant Br. at 43. The Plaintiffs contend that the district court "conducted the necessary review," and that GM "erroneously equates causation with reliance in discussing many of the claims." Appellee Br. at 44. In considering the applicable state laws, the district court engaged in a thorough examination of each of the rules and their elements and concluded that the Plaintiffs had "demonstrated that any individualized proofs either are not required or will not predominate over the common issues in each state." *Speerly*, 343 F.R.D. at 509, 536–52. The district court responded to GM's objection that there were individualized issues by stating that "[t]he predominant elements of claims for consumer fraud . . . are consistent across all jurisdictions," and discussed both reliance and causation. *Id.* at 518. It concluded that any individualized issues would not preclude class certification because there were "[a]t least two elements . . . [that] will predominate over any individualized inquiries in this case, which are (1) proof of intentional concealment or deception by the defendant concerning its

knowledge of the alleged defects, and (2) the significance of the information withheld to a reasonable consumer." *Id.*

In its brief on appeal, GM identifies twenty-one of the certified states whose relevant laws require a showing of either individualized reliance or causation:  Alabama; Arizona; Arkansas; Florida; Illinois; Kansas; Kentucky; Louisiana; Maine; Michigan; Minnesota; New Hampshire; New Jersey; New York; North Carolina; Oklahoma; Pennsylvania; Tennessee; Texas; Washington; and Wisconsin.   GM argues that these individualized inquiries will predominate over the common questions involved in the case, citing largely unpublished or lower court decisions to support its argument.  Appellant Br. at 44.  We explore each of the states below but note that GM does not put forth any specific argument for any state as to why the reliance and/or causation elements in that state's statute cannot be satisfied via class-wide proof.

### a.  Florida, Illinois, New Hampshire, and North Carolina

We have previously determined that Florida's, Illinois's, New Hampshire's, and North Carolina's relevant statutes do not require individualized reliance or causation in such a way that would preclude class certification, as the district court noted in its decision.  *Rikos*, 799 F.3d at 514–18.  We hold that this is the case as to the common issues of law and fact that the district court certified.   In determining that the individualized reliance or causation factor for each of these states could be satisfied through the common questions of law and fact, the district court considered each of the relevant statutes:  Florida's Deceptive and Unfair Trade Practices Act; Illinois's Consumer Fraud and Deceptive Business Practices Act; New Hampshire's Consumer Protection Act; and North Carolina's Unfair and Deceptive Acts and Practices Act.  *Speerly*, 343 F.R.D. at 539–41, 545–46, 548.  In doing so, the district court concluded that, based on precedent and the elements involved in the present class action, these statutes either did not require individualized reliance, or that the individualized reliance prong would not predominate over the common questions that the class action addresses.  *Id.*  Further, in discussing what the common elements were in consumer fraud claims, the district court identified both reliance and causation as "consistent" elements in consumer fraud and fraudulent concealment claims.  *Id.* at 518.

GM does not advance any theory as to why the reliance and/or causation elements in Florida, Illinois, New Hampshire, and North Carolina law would support a holding that the district court abused its discretion with regard to these states in the particular class action before it. Some of the cases that GM cited simply establish that there exists a reliance and/or causation element, while others determine that in different class actions the reliance or causation element would predominate over those particular common questions of law and fact. Appellant Br. at 44 nn. 9 & 10. We conclude that the district court did not abuse its discretion in determining that these four jurisdictions could be certified in the class action.

### b. Alabama

The district court considered the elements of Alabama's Deceptive Trade Practices Act and identified precedent that had "found claims under the ADTPA amenable to class certification." *Speerly*, 343 F.R.D. at 536. In *Lisk v. Lumber One Wood Preserving, LLC*, the Eleventh Circuit did not express concern that Alabama's law precluded certification of a class action, albeit under a different set of circumstances. 792 F.3d 1331, 1334–36 (11th Cir. 2015). GM identifies one case to support its claim that Alabama has a causation element that would preclude the Alabama subclass from being included in the class definition, Appellant Br. at 44 n.10, citing *EBSCO Industries, Inc. v. LMN Enterprises, Inc.*, 89 F. Supp. 2d 1248, 1265 (N.D. Ala. 2000), but its citation does not convince us that the causation element in the Act would predominate over common questions of law and fact identified by the district court in the present class action. Absent an indication that the district court abused its discretion in evaluating Alabama's relevant statute, we AFFIRM the district court's inclusion of the Alabama Plaintiffs.

### c. Arizona

The relevant caselaw as to Arizona's Consumer Fraud Act provides mixed guidance as to whether the reliance element would predominate over the common questions of law and fact. *Compare Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 624 (D. Ariz. 2017) (determining that, under Arizona's Consumer Fraud Act, reliance would have to be proven "by each [purported] class member" because not all class members had been exposed to an "omitted fact" on which the claim hinged), with *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 835 (D.

Ariz. 2016) (suggesting that class certification may be appropriate when dealing with a material omission about an "inherently flawed" product). Here, the district court recited the elements that Arizona's Consumer Fraud Act requires plaintiffs to show and pointed out that other federal courts had found claims under the Act "amenable to class certification." *Speerly*, 343 F.R.D. at 537. The common questions of law or fact involved in the class action will also involve the district court evaluating what "intentional concealment or deception" GM undertook and what the "significance of the information withheld [would be] to a reasonable consumer." *Id.* at 518. It does not appear, at this juncture, that there will need to be an individualized inquiry into whether or not GM made omissions that some of the class members were exposed to that others were not. *Cf. Schellenbach*, 321 F.R.D. at 624. Based on the district court's discussion of the common elements that it will be considering in the class action and its discussion of Arizona's Consumer Fraud Act, we conclude that there is no indication that the district court abused its discretion in including the Arizona Plaintiffs in the class definition.

### d. Arkansas

In evaluating the Arkansas subclass, the district court considered the Arkansas Deceptive Trade Practices Act and concluded that "[i]ndividualized reliance need not be proved." *Speerly*, 343 F.R.D. at 537. It also pointed out that other federal courts had "certified classes for both [Arkansas's Act] and implied warranty claims." *Id.* GM cites a case that states that Arkansas courts have not yet opined on whether the ADTPA requires reliance before suggesting that "the better view is that reliance is an element of the claim." *Apex Oil Co. v. Jones Stephens Corp.*, 881 F.3d 658, 662 (8th Cir. 2018). However, GM does not point to anything about this case that would result in the reliance element predominating over the common questions of law and fact. Other federal courts, as noted in the district court's order, have determined that the reliance prong in Arkansas's law does not preclude class certification, provided that "putative members can establish proof of reliance by class-wide proof." *Murphy v. Gospel for Asia, Inc.*, 327 F.R.D. 227, 243 (W.D. Ark. 2018). As discussed above regarding the other states' statutes, the district court engaged in a lengthy analysis of the common elements that the class members would need to prove, including reliance on GM's "concealment of a material fact." *Speerly*, 343 F.R.D. at

518.  The district court did not abuse its discretion in determining that Arkansas law did not pose individualized issues that would predominate over the common questions of law and fact.

### e.  Kansas

The district court considered the elements of a claim under Kansas's Consumer Protection Act and determined that "[i]ndividualized reliance need not be proved." *Speerly*, 343 F.R.D. at 541.  In the unpublished case that GM cites for support that Kansas's statute precludes class certification because of the reliance prong, the district court had determined that individualized reliance did not pose a predominance problem with respect to "alleged omissions." *Delcavo v. Tour Res. Consultants, LLC*, No. 21-2137-JWL, 2022 WL 1062269, at *8–9 (D. Kan. Apr. 8, 2022).  The court in *Delcavo* took issue with the fact that establishing causation would "require individualized inquiries into the particular representations made by defendant to each member." *Id.* at *9.  Here, though, the Plaintiffs are "postulat[ing] that all class members were affected by the same omissions" and misrepresentations from GM, regarding their alleged defects. *Speerly*, 343 F.R.D. at 523.  Other caselaw addressing Kansas's Consumer Protection Act demonstrates that the district court here did not abuse its discretion when determining that any individualized issues that may arise under the act would not predominate over the common questions of law and fact. *See Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 615 (D. Kan. 2014) (suggesting that "suits alleging omission of a material fact present questions suited to class actions").

### f.  Kentucky

There is little caselaw that firmly addresses whether Kentucky's Consumer Protection Act or Kentucky's express warranty statute require reliance and/or causation elements on such an individualized basis that they would predominate over the class questions.  The district court discussed the elements of each of the statutes, determined that they would not predominate over the common questions of law and fact, and pointed out that other federal courts had "certified claims under Kentucky's Consumer Protection Act and warranty claims under [Kentucky's] iteration of the U.C.C." *Speerly*, 343 F.R.D. at 542.  GM identifies two cases that address Kentucky law: *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290–91 (6th Cir. 1982)

(reliance in express warranty), and *Corder v. Ford Motor Co.*, 869 F. Supp. 2d 835, 838 (W.D. Ky. 2012) (reliance and causation in Kentucky's Consumer Protection Act). Neither case indicates that the elements discussed with regard to the respective statutes would preclude a court from using class-wide proof in a class action. The district court did not abuse its discretion when it determined, after a rigorous analysis of the relevant Kentucky statutes and caselaw, that there was not a predominance issue.

### g. Louisiana

As with Kentucky, there is little caselaw that provides conclusive guidance on whether Louisiana's statutes will pose predominance issues for the certified class questions. The district court evaluated the elements under Louisiana's Unfair Trade Practices Act and fraudulent misrepresentation claims and determined that "[i]ndividualized reliance is not an element of either claim." *Speerly*, 343 F.R.D. at 542. The one case that GM cites in support of its claim that reliance prohibits certification does not include anything that would indicate to us that the district court abused its discretion in determining that Louisiana's statute did not prohibit it from including Louisiana Plaintiffs in the class certification. *See In re Ford Motor Co. Vehicle Paint Litig.*, No. MDL 1063, 1997 WL 539665, at *2 (E.D. La. Aug. 27, 1997) (stating that "plaintiffs must at least be able to say that had they known of [] concealed information, they would not have acted as they did to their detriment" without clarifying whether this element goes to reliance or causation, but providing no indication that this element cannot be proven by class-wide proof). Given the district court's in-depth discussion here of the elements that it determined can be shown through class-wide proof, including both causation and reliance, we conclude that the district court did not abuse its discretion in including the Louisiana Plaintiffs in the class.

### h. Maine

The district court also determined that Maine's Unfair Trade Practices Act did not require a showing of individualized reliance. *Speerly*, 343 F.R.D. at 542–43. Although there is precedent indicating that individualized reliance may become an issue in class actions under certain circumstances, this imposes a predominance problem only when there is an insufficient showing that there is "common class-wide proof." *Sanford v. Nat'l Ass'n for the Self-Employed,*

*Inc.*, 264 F.R.D. 11, 14–16 (D. Me. 2010) (determining that the Unfair Trade Practices Act precluded class certification when the plaintiffs were unable to advance a uniform theory of misrepresentation but leaving open the possibility that class members could show reliance provided the "deceptive or misleading statements" were made on a sufficiently class-wide basis). As the district court here noted in its order, the "proof of intentional concealment or deception" by GM regarding the alleged defects is a central element that will predominate over individualized issues. *Speerly*, 343 F.R.D. at 518. The district court did not abuse its discretion in determining that Maine's law does not present individualized issues that will predominate over the common questions of law and fact in this class action.

### i. Michigan

After evaluating Michigan's Consumer Protection Act, the district court concluded that a claim brought under this Act that was "premised on a failure to disclose material facts does not require a consumer to prove reliance or a duty to disclose." *Speerly*, 343 F.R.D. at 543 (quoting *Flynn v. FCA US LLC*, 327 F.R.D. 206, 220 (S.D. Ill. 2018)). On appeal, GM argues that Michigan's Consumer Protection Act "require[s] proof of causation," citing *In re OnStar Contract Litigation*, 278 F.R.D. 352, 377 (E.D. Mich. 2011). Appellant Br. at 44. The discussion in *OnStar* revolves around reliance rather than causation and concludes that the statute does not preclude class certification on predominance grounds, provided that the "alleged misrepresentations that form[] the basis of [a Michigan Consumer Protection Act] count . . . [are] 'all substantially similar.'" *Id.* (quoting *Dix v. Am. Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206, 210 (Mich. 1987)). Here, the district court determined that one of the central questions that would predominate in this class action was the "proof of intentional concealment or deception by" GM. *Speerly*, 343 F.R.D. at 518. There is thus nothing that would compel us to conclude that the district court abused its discretion in including the Michigan Plaintiffs in the class.

### j. Minnesota

The district court analyzed Minnesota's Consumer Fraud Act and concluded that its causation requirement "is subject to common proof where all purchasers allegedly were exposed

to the same misrepresentations." *Speerly*, 343 F.R.D. at 544–45. As discussed above, it appears at this point in the litigation that the Plaintiffs will seek to introduce class-wide proof against GM with regard to the misrepresentations or concealments that the company made. In the case that GM cites as support for its claim that predominance issues preclude the Minnesota Plaintiffs from inclusion in the class, the court in fact stated that the "Minnesota Supreme Court . . . [has] reiterated that 'direct proof of reliance is not required to establish a causal nexus.'" *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 951–52 (D. Minn. 2020) (quoting *State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 137 (Minn. 2019)). *See also Taqueria El Primo LLC v. Ill. Farmers Ins. Co.*, 577 F. Supp. 3d 970, 998 (D. Minn. 2021) ("[A]lthough plaintiffs must still prove a causal nexus between the allegedly wrongful conduct of the defendants and their damages, this proof need not include direct evidence of reliance by individual consumers of defendants' products." (emphasis omitted) (quoting *In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008))). On that basis, there is nothing to indicate that the district court here abused its discretion in concluding that any individualized issues that may arise under Minnesota's Consumer Fraud Act do not pose a predominance issue over the common questions of law and fact.

### k. New Jersey

In evaluating New Jersey's Consumer Fraud Act ("NJCFA"), the district court concluded that "[f]ederal courts have endorsed the certification of class claims under the NJCFA where it is alleged that all class members overpaid for defective goods." *Speerly*, 343 F.R.D. at 546. Other federal courts evaluating New Jersey's statute have determined that it does not preclude a class action on a "benefits of the bargain" theory—that is, a claim that a "consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011). In the case that GM cites in support of its contention that the district court erred in granting the class certification, the Third Circuit concluded that a district court abused its discretion when it made a "'presumption of causation' ruling without making key factual findings that the NJCFA and Rule 23 require." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 608 (3d Cir. 2012). Here, the district court engaged in a rigorous analysis of the relevant law as well as the Rule 23

requirements before concluding that the common questions of law and fact predominated over the individualized issues with regard to what information the Plaintiffs had and how they would have reacted to it. *Speerly*, 343 F.R.D. at 518; *cf. Marcus*, 687 F.3d at 610. The district court did not abuse its discretion when it included the New Jersey Plaintiffs in the class certification.

### l. New York

On appeal, GM argues that New York's express warranty and General Business Laws require individualized findings of reliance and causation, respectively. Appellant Br. at 43–44. The district court evaluated each of the laws and concluded that New York General Business Law § 349 did not require "[p]roof of individualized reliance on deceptive omissions," and that other federal courts had certified claims brought under the express warranty law. *Speerly*, 343 F.R.D. at 547–48. As to the express warranty claim that the Plaintiffs have brought, "New York courts have held that a plaintiff need not demonstrate reliance when an express warranty has been given, since the terms of the warranty are the basis of the bargain upon which the purchaser presumably relied." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 547 (C.D. Cal. 2012) (citing *CBS Inc. v. Ziff-Davis Pub. Co.*, 553 N.E.2d 997 (N.Y. 1990)). GM mentions a case that identifies reliance as an element in a New York express warranty claim but does not explain why, in the case before us, the district court erred in concluding that the common questions of law and fact would predominate over the need to show that the Plaintiffs had relied on the express warranty on an individualized basis. Appellant Br. at 44 n.9; *see Speerly*, 343 F.R.D. at 509 (discussing the common elements of the express warranty claims and concluding that they were "subject to universal proofs in each of the subclasses"). The district court did not abuse its discretion in determining that the express warranty claim under New York law did not present a predominance issue.

Similarly, GM does not identify why the district court's determination that the causation issue presented by New York General Business Law § 349 would pose a predominance issue. The case that they point to, *In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II)*, No. 03-4558, 2012 WL 379944, at *14 (D.N.J. 2012), states that New York's law requires a showing of causation. However, in that case, the district court determined that there was a predominance issue with regard to causation because there was "no uniform misrepresentation."

*Id.* Here, the district court identified the "proof of intentional concealment or deception" by GM with respect to the alleged defects as one of the central, class-wide questions. There is no indication at this point that it abused its discretion in determining that this was sufficiently uniform to predominate over individualized issues posed by New York's General Business Law § 349.

### m. Oklahoma

There is little caselaw regarding the proof of causation in Oklahoma's Consumer Protection Act that GM claims on appeal will predominate over the common issues of law and fact. In concluding that there was not a predominance issue, the district court identified the four elements of a "private action under the [Oklahoma Consumer Protection Act]," including the requirement that a "challenged practice cause[] plaintiff's injury." *Speerly*, 343 F.R.D. at 548 (quoting *Watson v. Vici Cmty. Dev. Corp.*, No. CIV-20-1011-F, 2021 WL 1394477, at *12 (W.D. Okla. Apr. 12, 2021)). Other federal courts have determined that nothing in the Act precludes class actions, provided that the claims and proof are sufficiently uniform across the class. *See Est. of Pilgrim v. Gen. Motors LLC*, 344 F.R.D. 381, 409 (E.D. Mich. 2023) (pointing out that "Oklahoma courts have previously certified claims under the [Oklahoma Consumer Protection] Act"). Although GM points to a case to support its argument that Oklahoma's statute requires a showing of causation, it does not advance any specific argument as to why that causation would predominate over the common issues that the district court identified as uniform across the class. Appellant Br. at 44 n.10 (citing *Patterson v. Beall*, 19 P.3d 839, 847 (Okla. 2000)). Nothing in the available caselaw demonstrates that the district court abused its discretion in determining that the Oklahoma Plaintiffs' claims could be demonstrated through class-wide proof and that any individualized issues would not predominate over the common questions of law and fact.

### n. Pennsylvania

The district court evaluated the Plaintiffs' claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law and concluded that "[p]roof of individual reliance is not required." *Speerly*, 343 F.R.D. at 549. Under Pennsylvania law, Plaintiffs must show that there was "justifiable reliance" when bringing a claim. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221–

23 (3d Cir. 2008). However, there is no indication that this justifiable reliance must be made on an individualized basis such that it would predominate over the common questions of law and fact, nor does GM advance an argument that, in this particular class action, the requisite justifiable reliance showing would come to predominate over the common questions of law and fact. The district court engaged in a lengthy discussion about the various elements that could be demonstrated by class-wide proof. *Speerly*, 343 F.R.D. at 518–20. At this point, there is nothing that would compel us to determine that the district court abused its discretion in determining that the justifiable reliance requirement could be satisfied by the common questions of law and fact in this case.

### o. Tennessee

On appeal, GM points to the Eleventh Circuit's recent decision in *Tershakovec* to argue that Tennessee law does not permit reliance to be proved on a class-wide basis. Appellant Br. at 44–45. *Tershakovec* appears to be addressing only common-law claims brought by the Tennessee plaintiffs. 79 F.4th at 1314. To the extent that the Plaintiffs in this case have brought their claims under the Tennessee Consumer Protection Act, we do not view *Tershakovec* as a guiding authority. Although the Act does require a showing of causation, as identified by the district court here in its discussion of Tennessee law, there is no indication that this causation cannot be shown on a class-wide basis. Therefore, as to the claims that the Tennessee Plaintiffs brought under the Tennessee Consumer Protection Act, we conclude that the district court did not abuse its discretion in including them in the class certification.

The fraudulent concealment claim is a closer call. The Eleventh Circuit has determined that the reliance requirement in Tennessee common law poses individualized issues that can pose predominance problems because plaintiffs must show that they "acted reasonably in relying on the representation." *Tershakovec*, 79 F.4th at 1314 (quoting *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 738 (Tenn. Ct. App. 1996)). The *Tershakovec* court stated that because reliance under Tennessee common law "turn[s] on individualized facts about the plaintiff, the defendant, and the specifics of their relationship," the claims were inappropriate. *Id.* With regard to the case in front of us, at least at this stage in the process, we do not view the individualized reliance requirement as predominating over the common questions of law and fact

that the district court identified.    Here, the district court is addressing a uniform misrepresentation (the intentional concealment or deception that GM made regarding the alleged 8L transmission defects) that is unlikely to vary much, if at all, for individuals, as well as a uniform inquiry into how a "reasonable consumer" would view the "significance of the information withheld."    *Speerly*, 343 F.R.D. at 518; *cf. Boynton v. Headwaters, Inc.*, 737 F. Supp. 2d 925, 931 (W.D. Tenn. 2010) (listing the factors that the *Tershakovec* court identified as too individualized for the class action in front of it, including many that could be answered by the common questions of law and fact in this present case, including the "relative availability of [] information," the "fiduciary relationship" between the parties, "whether there was concealment of the fraud," whether the Plaintiffs "had an opportunity to discover the fraud," and "the specificity of the statements").    The district court here did not abuse its discretion when it concluded that the individualized issues in Tennessee law would not predominate over the common questions that it would be addressing.

### p. Texas

GM also points to *Tershakovec* when arguing that the Texas Plaintiffs are similarly precluded from the class certification on the basis of individualized reliance.    Appellant Br. at 44–45.    The *Tershakovec* court determined that plaintiffs must show "actual reliance" when bringing claims under the Texas Deceptive Trade Practices-Consumer Protect Act, and that the Act thus precluded the Texas Plaintiffs' inclusion in the class action.    79 F.4th at 1313. However, the Supreme Court of Texas has held before that when a class is seeking certification and can advance "class-wide evidence of reliance" through proof such as a uniform misrepresentation made to all members, the Act's reliance requirement does not defeat class certification.    *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 923 (Tex. 2010).    Here, the district court has identified such a uniform misrepresentation as one of the core common questions that the class action will seek to address.    *Speerly*, 343 F.R.D. at 518.    Accordingly, we conclude that the district court did not abuse its discretion in determining that reliance under Texas law did not pose such an individualized problem as to preclude the Texas Plaintiffs from the class action.

### q. Washington

The district court concluded that the Washington Consumer Protection Act did not require a showing of individualized reliance. *Speerly*, 343 F.R.D. at 551. The Washington Supreme Court has clarified that "reliance is [not] necessarily an element of [a] plaintiff's CPA claim." *Thornell v. Seattle Serv. Bur., Inc.*, 363 P.3d 587, 592 (Wash. 2015). In fact, in the case that GM points to in support of its argument that Washington requires a showing of reliance, the court concluded that "[w]hen a plaintiff alleges deception through omission of a material fact, a rebuttable presumption of reliance applies." *Eng v. Specialized Loan Servicing*, 500 P.3d 171, 181 (Wash. Ct. App. 2021). The district court did not abuse its discretion in determining that any reliance issue would not predominate over the common questions of law and fact in this class action with regard to the Washington Plaintiffs.

### r. Wisconsin

In evaluating Wisconsin's Deceptive Trade Practices Act, the district court determined that "class-wide common proof of reliance may be offered where a defendant's deceptive conduct allegedly affected all class members in a uniform manner." *Speerly*, 343 F.R.D. at 552. GM argues that Wisconsin's Act does not permit claims that are based on omissions. Appellant Br. at 44 n.10 (citing *Tietsworth*, 677 N.W.2d at 245). However, the district court did not certify the class on that basis, but instead focused on whether GM had engaged in deceptive conduct and made a "false, deceptive, or misleading representation[]," and pointed out that other federal courts had found Wisconsin's Deceptive Trade Practices Act amenable to class action. *Speerly*, 343 F.R.D. at 518, 551–52 (citing *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292, at *26 (W.D. Mo. Mar. 21, 2019)). We conclude that the district court did not abuse its discretion in including the Wisconsin Plaintiffs in the class definition.

The district court correctly pointed out that, in the event that individualized issues arise in the course of the class action that do come to predominate over the common questions of law and fact, the district court can cull the class later on. The class certification stage is not to be used as "a dress rehearsal for the trial on the merits." *Whirlpool*, 722 F.3d at 851–52 (quotation

omitted).  The relevant question before us at this point in the proceedings is whether the district court sufficiently and rigorously analyzed the claims and relevant caselaw in determining that the common questions of law and fact predominated over any individualized issues that may arise. As the case comes to us, there is no indication that the district court abused its discretion in evaluating each state's laws and relevant precedent before concluding that individualized issues from each state would not predominate over the common questions that it had identified as central to the class action.  Should, in the course of further proceedings, individualized issues predominate over the common questions of law and fact that the district court identified, it may cull the class as required.

### 3. Merchantability

GM also argues that the district court erred when it found that merchantability was "an 'entirely objective inquiry'" across all of the certified states, because certain states "reject individual implied warranty claims where a vehicle has been driven extensively without issue or with issues that do not render the vehicle inoperable."  Appellant Br. at 45–46.  Specifically, GM's brief identifies Florida, Georgia, Maine, Minnesota, and New Jersey as such states.  *Id.* at 45.  The Plaintiffs contend that the district court engaged in a sufficiently thorough consideration of the merchantability issue, but "rejected GM's minimization of the defects."  Appellee Br. at 52.

In *Tyson Foods, Inc. v. Bouaphakeo*, the Supreme Court stated that predominance inquiries hinge on whether "the issue is susceptible to generalized, class-wide proof."  577 U.S. 442, 453 (2016) (quotation omitted).  When the district court considered whether the claims had sufficient common elements, such that class certification was appropriate, it discussed the implied warranty causes of action that several states have that "require[] the plaintiffs to prove that a product is not 'merchantable.'"  *Speerly*, 343 F.R.D. at 510.  After this analysis, the district court concluded that its review of the "numerous jurisdictions hew[ed] consistently to the view that 'merchantability' of an automobile requires a showing that the vehicle operates in a 'safe condition' or provides 'safe transportation.'"  *Id.* at 511.  Further, whether the errors posed by the 8L transmissions impacted the consumers' safety or the vehicles' intended use is a class-wide question, regardless of which way the decision maker eventually goes.  GM's brief does not

provide much reasoning as to why the district court would have abused its discretion in determining that an inquiry into the alleged defects in the 8L transmissions would satisfy the merchantability requirements of certain states. For example, GM cites the unpublished decision *Tellinghuisen v. Chrysler Group, LLC*, No. A13-2194, 2014 WL 4289014, at *3 (Minn. Ct. App. Sept. 2, 2014), for the premise that Minnesota has rejected individual implied warranty claims when a vehicle has been driven without issue. Appellant Br. at 46 n.11. However, GM does not explain why the safe-and-reliable transportation standard for merchantability would not be sufficiently addressed by a class-wide inquiry into the safety of the 8L transmissions. *See Speerly*, 343 F.R.D. at 511–12 (discussing the merchantability element with regard to each state involved in the class action). There is no indication that the merchantability issues would predominate over the common questions of law and fact in this case, and we hold that the district court did not abuse its discretion in determining that the merchantability issue did not bar it from certifying the class.

### 4. State Substantive Bars

GM also claims that four states—Alabama, Arkansas, Louisiana, and Tennessee—have a "substantive state law" in place that "prohibits private class actions within the same statutory provision creating a private right of action for individual consumers." Appellant Br. at 47. The Plaintiffs respond that GM's motion to dismiss discussed only Louisiana's and Tennessee's statutes, but that the district court nevertheless analyzed the relevant statutes for all four states and determined that despite this prohibition, federal courts routinely certified classes from these states. Appellee Br. at 52–53.

In *Albright v. Christensen*, we determined that Justice Stevens's concurrence in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 421–25 (2010), controlled when determining whether a federal rule governs if it "collides" with state law. 24 F.4th 1039, 1044–45 (6th Cir. 2022). Justice Stevens's concurrence stated that federal rules, like Federal Rules of Civil Procedure 23, "cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring). Statutes that prohibit class actions like the one

before us do not "abridge[], enlarge[], or modif[y] a substantive right" in their respective states. *See, e.g.*, *Lisk*, 792 F.3d at 1336–37 (concluding that Alabama's class action prohibition did not expand or impact substantive rights, because the seller's "substantive obligation was to comply with the ADTPA," and the buyers' "substantive right . . . was to obtain [a product] that complied with [the seller's] representations"). Likewise, the Plaintiffs' claims in this case against GM do not change whether Plaintiffs bring them individually or as a class. None of the four states identified by GM appear to have statutes containing any aspects that would impact the Plaintiffs' substantive rights, such that the district court abused its discretion in including them in the certified class, nor does GM identify any such elements in its brief on appeal.

### 5. Individualized Differences in Current and Former Owners

GM also contends that the district court overlooked the fact that some GM vehicle owners had been able to recoup their losses already, because they sold their cars and therefore "pass[ed] any purported economic injury and damages to the next buyer." Appellant Br. at 48. However, as the Plaintiffs pointed out, the district court accepted and considered a "Diminished Value Model that showed those who resold could have done better had GM not sold a defective product." Appellee Br. at 54; *see also* R. 267 (Order & Op. Den. Various Mots. at 14) (Page ID #20207). Further, we have stated that "[w]hether some Plaintiffs are unable to prove damages because they eventually recouped the withheld depreciation . . . is a merits question, and the district court has the power to amend the class definition *at any time* before judgment." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463 (6th Cir. 2020) (emphasis added) (quoting *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018)). The district court did not abuse its discretion when it accounted for the fact that the Plaintiffs have some evidence that may show that even resellers experienced loss and by declining to consider this issue in full before it reached the merits stage.

### G. Class-wide Damages Models

GM also claims that the district court abused its discretion when it "rel[ied] on [the Plaintiffs'] proffered expert opinions and models both to (i) try to establish an overpayment injury and (ii) to create a metric to pay everyone in the class." Appellant Br. at 51.

The Plaintiffs argue that the proffered statisticians and damages experts did not rely on or assume "'a unitary common flaw' or single defect" when reaching their conclusions. Appellee Br. at 55.

"[M]odel[s] purporting to serve as evidence of damages in [] class action [suits] must measure only those damages attributable to" the theory advanced by the Plaintiffs. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). GM alleges that the Plaintiffs have a *Comcast* problem because their experts "operated under the obsolete single-defect assumption." Appellant Br. at 51–52. All three of the Plaintiffs' experts discussed the shudder and shift quality issues as distinct, and none of them appear to have opined on what caused either issue (although they do discuss the steps that GM took to address the shudder and shift quality issues). *See* R. 170-5 (Iyengar Rep. at 7, 18) (Page ID #5578–79, 5590); R. 179-2 (Eichmann Rep. at 5–8) (Page ID #8174–77); R. 182-1 (Wachs Rep. at 26) (Page ID #8793). Further, even if the experts had been operating under a theory that both the shudder and the shift quality issues were caused by the same defect, it would not change the fact that the Plaintiffs' theory is that GM sold vehicles that did not operate as an objective consumer would expect them to. *See Comcast*, 569 U.S. at 35. The district court said as much, stating that Dr. Wach's testimony "amply suggest[ed] that the defect is caused by a common design failure," rather than pinpointing precisely what the alleged defect was. *Speerly*, 343 F.R.D. at 522. We conclude that the district court did not abuse its discretion when it relied on these reports in certifying the class.

Next, GM claims that the Supreme Court's decision in *Tyson Foods* "requires exclusion of Eichmann's average injury-and-damages opinions." Appellant Br. at 52. It argues that the Plaintiffs cannot show injury "by 'simply relying on assumptions about the general population,'" *id.* (quoting *Rowe v. E.I. duPont de Nemours & Co.*, 2008 WL 5412912, at *14 (D.N.J. Dec. 23, 2008)), and that the model violates GM's due process rights by "stripping GM of its substantive rights to defend against persons whose vehicles have performed as bargained-for, or have been repaired under warranty, or will yet be repaired under warranty if a defect manifests, or who did not overpay, or who otherwise suffered no damages," *id.* at 53.

In *Tyson Foods*, the Supreme Court stated that "[i]n many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's

liability."  577 U.S. at 455 (quoting Manual of Complex Litigation § 11.493, p. 102 (4th Ed. 2004)).  Here, there is nothing to indicate that the samples and averages that the Plaintiffs' experts provided and that the district court referenced in certifying the class "could [not] sustain[] a reasonable jury finding as to" the damages suffered by the purchasers of the affected GM vehicles.  *Id.*  GM also claims that the approach that the district court took will sweep in individuals whose vehicles never manifested one or both defects.  We hold that the district court did not abuse its discretion when it found that this issue could be resolved in—and in fact, was better suited for—the merits stage, a conclusion that is consistent with our precedent.  *See Hicks*, 965 F.3d 452.

## H.  Potential Arbitration Proceedings

Finally, GM contends that the district court erred in determining that GM had "waived any arbitration rights it might have as to *all* 800,000+ absent members in the putative classes." Appellant Br. at 54.  GM argues that certification was precluded because "an unidentified but substantial minority of absent class members" may be subject to arbitration agreements.  *Speerly*, 343 F.R.D. at 524.  The district court, however, found that GM had waived this argument "by [GM's] engaging in this litigation and seeking dispositive rulings from the Court on the plaintiffs' claims."  *Id.*

We have held that "although 'we will not lightly infer a party's waiver of its right to arbitration,'" we may conclude that a party has waived that right if it "(1) tak[es] actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) "delay[s] its assertion to such an extent that the opposing party incurs actual prejudice.""  *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (alterations in original) (quoting *Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010)).  Not every motion to dismiss that a party files constitutes a waiver of arbitration, and the relevant question before us when determining whether GM waived its arbitration argument is how "enmeshed in the merits" the motion to dismiss is.  *Id.*  For example, motions to dismiss based on "'jurisdictional and quasi-jurisdictional grounds' but [that seek] 'no action with respect to the merits of the case'" are not so enmeshed in the merits as to be deemed "inconsistent with later seeking arbitration."  *Id.* (quoting *Dumont v. Sask. Gov't Ins.*, 258 F.3d 880, 886–87 (8th Cir. 2001)).

Here, we hold that the district court did not abuse its discretion when it determined that GM had acted inconsistently with, and therefore waived, its right to arbitrate various of the Plaintiffs' claims.  As the district court pointed out, the initial motion to dismiss contains both jurisdictional claims (which would not, on their own, necessarily lead to a conclusion that GM had waived its arbitration rights), and a number of arguments on the merits of the claims. *Speerly*, 343 F.R.D. at 524.  The motion to dismiss also seeks "dispositive rulings from the Court on the plaintiffs' claims."  *Id.*; *see also* R. 12 (Mot. to Dismiss) (Page ID #227–65).  For example, in its initial motion to dismiss, GM asserted that the Plaintiffs' claims failed on a number of grounds, including merchantability, R. 12 (Mot. to Dismiss at 9) (Page ID #251); privity, *id.* at 11 (Page ID #253); GM's specific knowledge of the defect, *id.* at 14 (Page ID #256); and various issues with specific state laws, *see, e.g.*, *id.* at 19–22 (Page ID #261–64).  Seeking to remedy these objections on the merits in federal court is "entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." *Solo*, 947 F.3d at 975.  The district court did not err here in viewing GM's myriad filings, which were thoroughly enmeshed with the merits of the case, as inconsistent with its claim now that certifying the class impedes on its right to arbitration.

After the Plaintiffs filed their CACAC on September 30, 2019, GM again filed a motion to dismiss that challenged various of the Plaintiffs' arguments on the merits on November 29, 2019.  *See* R. 53 (Mot. to Dismiss CACAC) (Page ID #3197–3267).  Although doing so, on its own, would not defeat a claim of waiver, *see Solo*, 947 F.3d at 975–76, it is notable that GM did not raise an arbitration issue in its initial motion to dismiss, filed on June 14, 2019, nor in its motion to dismiss the CACAC, filed on November 29, 2019.  Instead, GM engaged in over two years of litigation after it filed both motions to dismiss.  The first time that GM raised an arbitration issue was during a hearing on a motion for leave to file a second supplemental complaint on December 16, 2021, when GM claimed that it had "learned during the discovery process that many of the plaintiffs have arbitration agreements."  R. 167 (Hr'g Tr. for Mot. for Leave to File at 10) (Page ID #5476).

GM went on to argue in a terse paragraph in its Opposition to the Plaintiffs' Motion for Class Certification, filed on March 7, 2022, that arbitration clauses serve as a bar to class

certification.  R. 245 (Opp'n to Pls.' Mot. for Class Cert. at 21) (Page ID #16947).  In this filing,
GM included a compilation of Plaintiffs' agreements from the relevant timeframe (2015 to
2019), all of which appear to be boilerplate agreements.  R. 245-58 (Comp. of Pls.' Arbitration
Clauses) (Page ID #19073–19134).  Of the nineteen Plaintiffs that GM identifies as subject to
arbitration clauses, only four were not named Plaintiffs on the September 30, 2019 CACAC.  *See*
R. 41 (CACAC at 1) (Page ID #2250); R. 245-58 (Comp. of Pls.' Arbitration Clauses at 1) (Page
ID #19073).  Three of those Plaintiffs were even named in the original April 10, 2019 complaint.
R. 1 (Compl. at 1) (Page ID #1).  Given this reality, along with the ubiquitousness of arbitration
agreements in transactions such as that of a sale of a vehicle, we find it difficult to believe that
the first time GM was aware that at least some Plaintiffs may be subject to arbitration agreements
was two-and-a-half years after the Plaintiffs filed their original complaint.  Yet GM did not make
any reference to arbitration clauses until a bare mention, at the earliest, in December 2021.  R.
167 (Hr'g Tr. for Mot. for Leave to File at 10) (Page ID #5476).  Nothing in GM's argument
before the district court indicates that GM was unable to access the Plaintiffs' agreements prior
to 2021, was unaware prior to 2021 that a number of the Plaintiffs might be subject to arbitration
clauses, or faced any other obstacle to making an argument earlier that the Plaintiffs who were
subject to arbitration clauses could not go forth with this litigation.  We hold that the district
court did not abuse its discretion in determining that GM had waived its right to arbitration
because it knew of its asserted right to arbitrate but acted inconsistently with that right by
"seeking dispositive rulings from the Court . . . some of which were forthcoming in its favor."
*Speerly*, 343 F.R.D. at 524–25 (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)).

### III.  CONCLUSION

We AFFIRM the district court's grant of class certification.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1940

DENNIS SPEERLY; JOSEPH SIERCHIO; DARRIN DEGRAND;
DANIEL DRAIN; WAVERS SMITH; RICHARD FREEMAN;
CHRISTOPHER GILES; LOUIS RAY; RICHARD SULLIVAN;
JAMES NORVELL; MICHAEL BANKS; GUY CLARK; MARIA
BARALLARDOS; CARY SHERROW; JASON KEVIN SINCLAIR;
KIMBERLY COULSON; TROY COULSON; ANDRE MCQUADE;
DONALD DYKSHORN; TAIT THOMAS; JAMES PAUL
BROWNE; WILLIAM FREDO; JON ELLARD; RHIANNA
MEYERS; RANDALL JACOBS; MICHAEL PONDER; PHILIP
WEEKS; KATRINA FREDO; JIMMY FLOWERS; STEVEN
BRACK; KEVIN WESLEY; BRIAN LLOYD; GREGORY
BUTSCHA; JERRY CARROLL; KIMBERLY CARROLL;
DOMINIC EATHERTON; THOMAS EDMONDSON; RICHARD
FILIAGGI; ROBERT HIGGINS; DAVID THOMPSON, DONALD
SICURA,

> Plaintiffs - Appellees,

> v.

GENERAL MOTORS, LLC,

> Defendant - Appellant.

```
┌─────────────────────────┐
│        FILED            │
│     Aug 28, 2024        │
│ KELLY L. STEPHENS, Clerk│
└─────────────────────────┘
```

Before: MOORE, COLE, and MATHIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's grant of class certification is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

Kelly L. Stephens, Clerk